## UNITED STATES v. PETTUS.

(Circuit Court, W. D. Tennessee. November 27, 1897.)

### No. 2,052.

1. INDICTMENT—DEMURRER.
    Counts of a demurrer to an indictment for perjury committed in an election contest will be overruled when the indictment is therein treated as one charging fraud at the election itself, instead of perjury at the contest proceedings.

2. SAME—SUFFICIENCY.
    Under Rev. St. § 5392, an indictment for perjury is sufficient if the word "knowingly" is omitted, and the indictment charges the crime as having been "willfully" committed.

3. PERJURY—WHEN INDICTMENT WILL LIE.
    An indictment for perjury will lie, though the proceedings in which the alleged perjury was committed are not concluded at the time the indictment is returned.

4. SAME—TRUTH MUST BE ALLEGED.
    An indictment which charges perjury with respect to several facts sworn to by accused, and sets forth his testimony thereupon, followed by allegations that such testimony is untrue, and that accused, at the time of his testimony, did not believe such statements to be true, is insufficient, as it does not set forth the truth of the facts in respect to which he is charged with false swearing.

5. INDICTMENT—SUFFICIENCY—SPECIFIC ALLEGATIONS.
    A count of an indictment charging perjury, and setting forth several alleged false statements of accused as to several distinct alleged fraudulent transactions occurring at an election, is insufficient if it does not point out the particular fraudulent transaction in regard to which the accused is charged with false swearing.

6. SAME—PERJURY—MATERIALITY OF FALSE STATEMENTS.
    A demurrer will lie to a count of an indictment for perjury when it appears that the testimony alleged to be false could not be material in the action in which it was given, under the statement of the issues as contained in such count.

Henry E. Pettus was indicted for perjury committed in an election contest, and demurs to the indictment.

Chas B. Simonton, U. S. Atty., and Thos. M. Scruggs, Asst. U. S. Atty.

Geo. B. Peters, C. P. Roberts, G. T. Fitzhugh, and T. H. Jackson, for defendant.

HAMMOND, J. The suggestion of the district attorney that the vice of the argument in favor of this demurrer is in treating this indictment as if it were one charging frauds committed at the election, whereas it is only an indictment for perjury committed in giving testimony in a contested election case, is quite true, as to several of the grounds of demurrer, and much of the argument. But it is not

true as to all of them. It applies to the third, fourth, seventh, and eleventh grounds of the demurrer, and they are therefore overruled.

The corner stone of this indictment is the pendency of an election contest for a seat in congress before the house of representatives at Washington; and we need not go behind that, into any inquiries as to the election itself. The charge here is that perjuries were committed by the defendant, in giving his testimony in that proceeding; and whether considered in relation to the jurisdiction of the court, or the sufficiency of the indicment, all that need be averred is that there was a contest pending, and that the alleged false swearing was done in that proceeding, which is sufficiently averred in this indictment.

The tenth ground of the demurrer is overruled, because the Revised Statutes of the United States (section 5392) omits the word "knowingly," and only uses the word "willfully," which, presumably, was considered as including the other. At all events, the omission of the word was, no doubt, intended to settle the aggravated controversy in the books about distinctions between the two words, "knowingly" and "willfully"; and now, under the statute, only the word "willfully" need be used.

The twelfth ground of the demurrer is also overruled, because it is not conceived to be absolutely necessary that the proceeding in which the alleged perjury was committed shall be ended before an indictment can be had. It is true that one of the authorities cited by defendant's counsel says that it is customary to withhold the indictment until it has been ended, but it is not decided that an indictment will not lie until the original proceeding has been concluded.

But the first, second, fifth, sixth, eighth, and ninth grounds of this demurrer are well taken, and will be sustained. They may all conveniently be treated together.

There are no pleadings known to the criminal law which require greater precision, certainty, and particularity than those relating to the crime of perjury. 2 Russ. Crimes, p. 631. To such an extent had this requirement of particularity gone that at one time it was almost impossible to draw an indictment for perjury which would stand the scrutiny of courts in respect of its precision; and therefore statutes have been passed, both in England and the American states, for the purpose of eliminating all that which was considered unnecessarily exacting in this regard. Yet there remains, in the substantial averments of an indictment for perjury, a requirement for accuracy, certainty, and particularity that cannot be avoided by even the most liberal of these statutes. Our own statute (Rev. St. § 5392 et seq.) is one of the simplest and most liberal of modern statutes relating to the offense; but it will be found, I think, that it has preserved to the fullest extent the essential elements of the old crime, and the forms of indictment under it must still conform to the demands of the offense as defined in this statute. We have another statute which enacts that no indictment shall be deemed insufficient because of any defect or imperfection in matter of form, but all matters of substance are still required. Rev. St. 1025.

It is entirely true that perjury may be predicated of a false statement that has any tendency to prove or disprove the matter in issue, and even of that which only circumstantially tends to prove or disprove it, as where a party willfully misstated the color of a man's coat, or willfully misstated the credit of another witness. 2 Russ. Crimes, 642. And therefore the question of materiality often depends almost entirely upon the competency, relevancy, or admissibility of the circumstance to which the false oath related; and, however trivial the circumstance may seem, yet, if it be material, the indictment will lie. But whether the indictment be founded on an oath like that, or others of a graver import, in perjury, as in all other offenses, a fundamental requirement is that the defendant shall, from the allegations of the indictment, understand precisely what he is called upon to defend. This is a constitutional requirement with us, which not even a statute can evade or avoid. Const. Amend. art. 6.

In an indictment for perjury committed in an insolvent debtor's court, it was alleged that the defendant swore, in substance, that his schedule contained a full, true, and perfect account of all debts owing to him at the time of presenting his petition, whereas the said schedule did not contain a full, true, and perfect account of all debts owing to him at that time, and this is all there was in the indictment; but Lord Tenterden, after consultation with all the other judges, held that it was insufficient, because it was quite impossible that the defendant could know, from allegations so vague and indistinct, what was to be proved against him, and this allegation conveyed no information whatever of the particular charges against which the defendant ought to be prepared to defend himself. Rex v. Hepper, Ryan & M. 210. And, to show what is meant by this, it will be found in Whart. Prec. Ind., that such an indictment should go on, and aver, not only that the schedule did not contain a full and true and perfect account of all debts owing to him at the time, but should have distinctly averred those which had been left out; as, in the form given, where the charge was that the schedules did not contain a true inventory of his estate as sworn to, it properly averred in the indictment that he was interested in and owned, individually and as a partner, the following estate, to wit (here enumerating the items of property which had been omitted from the schedules). Whart. Prec. Ind. 584. That is precisely the matter with this indictment. It does not, certainly, in the first count, contain the least information, by any averment, of any particular fraud, trick, or other unfairness at the election which would notify the defendant of the untruthfulness of his oath in respect of which he was called to defend it. If it be conceded that the issues between the contestant and the contestee, pending before the house of representatives, were of the broadest character, so that they would include and make material the allegation of falsity contained in this count, the count does not point out with certainty and particularity any fact or circumstance which is to be relied upon by the government to show that the defendant's oath was false. You do not have to put the evidence of the fact in the indictment, undoubtedly; but you do have to point out the fact or the conduct or the act

to which the evidence will relate, with such specific averment as will enable the defendant to know what he has to defend. This count avers the false oath to have been that the defendant was present during the whole time the vote was proceeding and while the ballots were being counted, and that there was not any fraud or unfairness practiced by any of the election officers at the said poll, and that there was not any fraud, trick, or other unfairness at the said election, that he knew of, and none of his own knowledge, and that, to his knowledge, the votes, as cast, were fairly and honestly counted. And then comes this averment of negation:

"Whereas, it was not and is not true, and at the time of so swearing the said Henry E. Pettus did not believe it to be true, that there was not any fraud or unfairness practiced by any of the election officers at the said poll, and that there was not any fraud, trick, or other unfairness at the said election, and that he knew of none of his own knowledge, and that, to his knowledge, the votes, as cast, were fairly and honestly counted."

This amounts properly to an allegation of the falsity of the oath, but that is not enough. The indictment should have gone on, and pointed out to the defendant, with sufficient certainty to notify him what he was called on to defend, the particular fraud, trick, or unfairness that would be proved within his knowledge to show that he had sworn falsely, and, as to the second averment, the particular unfairness and dishonesty in counting the vote. There is not one word or syllable in this indictment to give him any such information, and it is not possible for that count to be sustained under the most liberal rules of pleading in respect of the offense of perjury. It is not necessary to consider any of the other objections that are made to it by this demurrer. The opinion of the court of appeals of Texas in the case of Gabrielsky v. State, 13 Tex. App. 428, very satisfactorily collects the authorities upon this subject, and states that it was well settled at common law, by all the authorities, that it was insufficient to merely negative, and declare to be false, the oath of the defendant, without stating the truth in regard to the fact. It is not sufficient that you shall say that the defendant swore falsely, but you must aver the truth as it appears in the facts, so that its falsity may appear, and he may know wherein the falsity lies. Says the court in that case:

"It is a constitutional right of the defendant to be informed by the indictment, in plain and intelligible words, of the nature of the charge against him, and with that degree of reasonable certainty which will enable him to prepare his defense. He should be told in the indictment wherein, and to what extent, the statements alleged to have been made by him were false, that he may know certainly what he is called upon to answer."

Under this rule there can be no question about the insufficiency of the first count of this indictment. No case has been cited by the district attorney to the contrary of this.

The second count in the indictment is somewhat more specific, but still falls entirely below the requirements of the rule just stated. It is only more specific because the alleged false oath pleaded in this count itself relates to a more particular fact than that pleaded in the first count, but, not more than the other count does this one tell us what the truth was; but, more especially, it does not inform the defendant in respect of what fact the truthfulness of his oath is to be

challenged. Giving, as before, the widest scope to the averments of the indictment as to the materiality of the matter inquired about in the alleged false oath, and we have it stated here that the said defendant did swear and depose that he and the other officers of election "moved the table back to the rear, as it was cold, and made a fire." This is the first substantive fact sworn to by the defendant. Then he swore "that he knew it was a cold day." This is the second substantive fact sworn to by him. Then, "that he sat in there (meaning in the polling room) all day with his overcoat on," which is the third substantive fact sworn to by him. Then, again, "that the sun may have been warm outside, but it was as cold as fits in there," being the fourth substantive fact sworn to by him. Yet again, "that the night was very frosty and cold, and that we (meaning himself and the other judges and officers of the election) made a fire in the building once or twice during the day," which is the fifth substantive fact sworn to by him. And then, taking up another subject, the allegation is that he swore "that he had no objection to a few or limited number of witnessing the count, if it could have been confined to a few representing both parties (meaning a limited number of electors witnessing the count of the vote)," which is the sixth substantive fact sworn to by him. Proceeding in regular form, the indictment says:

"Whereas, in fact, it was not and is not true, and at the time of so swearing and deposing the said Henry E. Pettus did not believe it to be true, that he, the said Henry E. Pettus, and the other judges and officers of the election, moved the table back to the rear *because* it was cold, and made a fire, or that he knew it was a cold day, or that it was as cold as fits in there (meaning in the polling room), or that the night was very frosty and cold, or that he would have been willing for a few electors to have witnessed the count."

It will be observed that this averment of the indictment just quoted does not say that they did not move the table back, nor that it was not cold, nor that they did not make a fire, nor that it was not a cold day, nor that he did not sit in the polling room all day with his overcoat on, nor that it was not "as cold as fits in there," nor that the night was not frosty and cold, nor that they did not make a fire in the building once or twice during the day, which would have given the defendant sufficient notice of the facts about which the truth of his oath was challenged by this indictment; but it only says that they did not move the table back *because* it was cold, etc., including all the above-stated facts except the sixth; and it does not, by any averment, state the true reason why they moved the table back, nor any conduct or act of the defendant, or within his knowledge, which would show a different reason from that alleged in his oath. We are left entirely in the dark by this indictment as to any particular or certain facts or conduct of the defendant upon which the government will rely to show that he had another reason—presumably, in the view of the government, a fraudulent reason—for moving the table back. It is not averred, even in the most general terms, that they moved the table back for the purpose of facilitating a false and fraudulent count in the election, and the particular acts of fraud are not specified, if any were committed; and so the defendant is no more advised, under this count in the indictment, than he is under the first count in the indict-

ment, as to the reasons for a challenge of the truth of his oath on this occasion, so that he may be prepared to defend against that which may be shown against him.

The third count in the indictment might be said to be somewhat more specific than the second, but it is hardly so when we come to analyze it in the view of the rule of law above stated, requiring the defendant to be notified of the charges that are made against him. Perhaps the objection that this count in the indictment does not show that the subject-matter of the alleged false oath was material to the issue between the contestant and the contestee for the seat in congress would be quite as fatal as that we have been considering, but we will pass that for a moment, and again give the broadest indulgence upon the subject of materiality in favor of the averments of the indictment upon that subject. In this count it is charged that the defendant swore "that he saw quite a number of colored voters lay down the ticket they brought with them to the polling place upon the table at the polling place, and pick up a Democratic ticket (meaning a ticket which had Carmack's name on it for congress, instead of Josiah Patterson's), and vote the same," which is the first substantive fact sworn to by the defendant, and "that one of the judges, C. H. Hare, kept a count of such changes of tickets by the colored people, and that he knew it was between forty and fifty," which is the second substantive fact sworn to by the defendant. And then this averment follows:

"Whereas, in fact, it was not and is not true, and, at the time of so swearing and deposing, the said Henry E. Pettus did not believe it to be true, that between 30 and 40 colored voters, or any number of colored voters, when presenting themselves at the said polls to vote, threw down their ticket, and took up a Democratic ticket, and voted the same."

This averment—and the whole count—seems to abandon the second of the substantive facts above mentioned, and does not even aver that it was false, and only charges that the first was false. Now, if it be conceded that it was a material fact, tending to prove or disprove the issue between Patterson and Carmack before the house of representatives, that any one should swear that he saw between 30 and 40 voters lay down one ticket, and take up another, and vote it for Carmack, without swearing that the tickets laid down were Patterson tickets, which this indictment does not aver, still there is no averment here that these 30 or 40 voters, or any one or more of them, who did not throw down their tickets, and did not take up a Democratic ticket and vote the same, voted any other ticket, whether for Patterson, or some other candidate for congress. It is true that this count in the indictment is particular to allege that this was sworn as to "quite a number of colored voters," and possibly it is left to be inferred that the colored voters voted for Patterson, or did not vote for Carmack; but the indictment does not say this, and does not notify the defendant that the government will undertake to show that all the colored voters, or that the colored voters generally, voted for Patterson, or for some other than Carmack, as sworn to in this oath of the defendant, thereby notifying him of the nature of the charge against him with that particularity required by the rule above stated. Nor

does the count aver that any less number than 30 or 40 colored voters voted for Carmack, so that the defendant would know that the government would try to show upon the trial that not so many as 30 or 40 colored voters voted for Carmack. We are left just as much in the dark as to what the truth was about the colored voters, in respect of this, as in the other counts of the indictment just considered. Nothing can be left, in criminal pleading, to mere intendment, and whatever intendments are to be based upon the description of these voters as colored voters will not answer the rule of particularity in pleading.

But if we are mistaken in the application of the above rule to this count in the indictment, and if it be correct to say that, owing to the nature of the fact itself about which the alleged false oath was made, the mere denial of its truth is sufficient to put the defendant on notice of what he is to meet, namely, the truth of the fact whether 30 or 40 colored voters laid down another ticket, and took up a Carmack ticket, and voted it, yet there is another fatal objection to this count. The count avers that, in taking the defendant's testimony on the occasion of his examination in the contested election case, it "was a material inquiry to know and be informed why, in the returns of the election at the said poll in Mason, Tennessee, on the 3d day of November, 1896, the contestant, Josiah Patterson, was credited with only 41 votes, and whether all the votes really cast for him as a candidate for congress of the United States for the Tenth congressional district of Tennessee, in said election, were honestly and fairly counted for him." That is the statement of the issue by which the materiality averred in the count is to be tested. It is so stated for the purpose of showing the materiality of the fact involved in the false oath, and its tendency to prove or disprove this particular issue, so pleaded, must be the only test of the materiality of the oath. It might be material to some other issue between Patterson and Carmack in their contest, or it might be material to the general result, or it might be material as to the credibility of the witness, and in some phases of the contested election case the testimony might be important; but, in our scrutiny of this indictment, we are required to confine our judgment as to the materiality of this oath to the precise and particular issue above stated, which is why Patterson was credited with only 41 votes at that polling place, or whether all the votes really cast for him as a candidate for congress were honestly and fairly counted for him.

Now, the averment of the indictment is that the defendant swore that he saw "quite a number of colored voters lay down the ticket they brought with them to the polling place, upon the table at the polling place, and pick up a Democratic ticket (meaning a ticket which had Carmack's name on it for congress, instead of Josiah Patterson's), and vote the same." It is not averred that he swore that the ticket which they brought with them to the polling place, and laid down upon the table, was a ticket with Josiah Patterson's name upon it. There is no such averment in the indictment, unless it is to be inferred from the allegation that those were colored voters, and that

the colored voters came to the polls with a Patterson ticket, which inference, in criminal pleading, is not permissible, as we have already stated.

The innuendo of the clause above quoted does not aver this: that the defendant, by taking the oath in the form and phrases that he did, meant that the ticket that they brought with them and laid down was a ticket with Josiah Patterson's name upon it. The oath was, as averred in the indictment, that these colored voters picked up a Democratic ticket (meaning a ticket which had Carmack's name on it for congress, instead of Josiah Patterson's); but that innuendo only interprets the meaning of the words "Democratic ticket," and cannot be at all held to go further, and say that the defendant meant by his oath that they laid down a Patterson ticket and took up a Carmack ticket. They might have laid down a ticket without any name on it for congress, or with some other man's name than Patterson's, and we might imagine many other kinds of tickets that they would lay down at a general election, for reasons satisfactory to themselves; and, to the issue as above defined by the count itself, the laying down of any other ticket than a Josiah Patterson ticket would be wholly immaterial, inconsequential, and utterly irrelevant; and to that particular issue which is pleaded in the count itself there could be no connection made with such action of the voters, without averment of the essential fact. It is not at all material to that issue, as stated, how many votes Carmack got, nor whether these 30 or 40 colored voters laid down one ticket, and picked up another with his name upon it, and voted it; for the issue stated is, did Josiah Patterson get, at that polling place, more than 41 votes? not whether he got more or less than Carmack; and were the votes that he really got fairly and honestly counted for him? Now, is it not apparent that in order to be material to that issue, in some form, this count should have averred that these 30 or 40 voters, or some other 30 or 40 voters, or any number of voters,—all colored voters, if you please,—voting at that election, voted for Josiah Patterson? But this is nowhere alleged in this indictment. It is not alleged that he received more than 41 votes at the election, within the knowledge of the defendant, nor that the votes counted for him by the election officers were not the real number of votes that he received; nor is it alleged in any way how this transaction about the 30 or 40 colored voters throwing down one ticket, and picking up another with Carmack's name upon it, and voting it, affected this issue, as pleaded in the count. In other words, the issue as stated for the test of materiality, as it must be in the pleadings, is one thing, and the fact stated, as sworn falsely, might have no relation to it; nor does any averment that we can lay hold of in any sense connect the two together, unless it be upon the inference already stated, that the colored voters were voting for Patterson; and that is not averred as a fact, and is left entirely as a mere matter of inference. Therefore it does not appear that the alleged false oath was at all material to the issue which is pleaded by the count itself as the test of its materiality. It will not do to say that this might be material to some other issue, or to the general

result of the contested election case, or that it would go to the credibility of the witness. The averment of the indictment itself cuts off all such considerations as this, by specifying the particular issue to which the alleged false oath related. , For these reasons the demurrer to this indictment will be sustained.