## UNITED STATES v. GARVETT et al.

### No. 25789.

District Court, E. D. Michigan, S. D.
July 24, 1940.

John C. Lehr, U. S. Atty., and Kenneth D. Wilkins, Asst. U. S. Atty., both of Detroit, Mich., for plaintiff.

William Henry Gallagher, of Detroit, Mich., for defendants.

PICARD, District Judge.

This matter comes before this court by way of a plea in abatement of the indictment wherein Morris Garvett and Oscar Adelman, two attorneys, are charged with violation of Section 88, Title 18 of U.S. C.A.

### Statement of Facts.

The indictment charges that Morris Garvett, as attorney, filed a petition to reorganize the Mara Villa Realty Company under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The plan of reorganization filed, if approved by the court and accepted by the creditors, would, it was charged, make possible the earning of large sums of money for debtor corporation. In addition the government claimed that Morris Garvett would, at the close of the litigation, be entitled to petition for legal fees, payable as administrative expenses.

It is further charged that in promoting the alleged Garvett objective, to wit, the securing of fees, Oscar Adelman, an attorney in Morris Garvett's office, made statement under oath that he, Oscar Adelman, owned a one-fifth interest (200 shares) in the debtor corporation—while in truth and in fact, Morris Garvett was the real owner. The stock, however, was in Oscar Adelman's name.

It is the claim of the government in the indictment that in making this false oath, knowing the same to be false, there was misrepresentation of a material matter in a proceeding then and there pending before this court in that the false oath directly affected the inquiry into the financial condition of the Mara Villa Realty Company; that it affected the good faith of the proposal of the plan itself; that it affected the question as to whether the stock should be permitted to be voted in acceptance or rejection of the plan, and lastly, that it affected the right of Morris Garvett as attorney for debtor to petition for attorney's fees as part of the administrative expense.

It developed at the hearing, however, and the facts further show that if the statement made by Oscar Adelman is à false oath, it was not and could not have been made for the purpose of laying foundation for fees to be obtained by Morris Garvett since throughout all the proceedings before Judge Lederle and throughout the record, it is apparent that Morris Garvett was not to receive any fees as part of the administration expenses under any circumstances.

How this fact, undisputed before this court, escaped the Grand Jury or those presenting the indictment cannot be accounted for except that possibly the record was not available. But anyone reading the record will note that Adelman's oath was not made with any malicious purpose in mind in so far as fees are concerned.

It also appears as a matter of fact that the petition filed by Morris Garvett on behalf of the Mara Villa Realty Company admitted that debtor corporation was insolvent, and it was determined insolvent by Judge Lederle. Accordingly the stockholders had no right to vote on the question of the acceptance or rejection of any plan.

It further appears that if the oath was false and was material it did not affect the decision of the court in any way since this court refused to approve the plan.

### Conclusions of Law.

Had this matter presented the issue that is suggested by the indictment, this court would have debated a great deal before considering seriously the plea in abatement. Had Garvett through Adelman permitted Judge Lederle to continue under the impression that he had no interest in stock of debtor company with the object in mind of later claiming fees, if and when the plan was approved, then regardless of the legal effect of Adelman's oath, this court would have felt that such a practice was inimical to the highest ethics of the profession of the law and would not hesitate to put both attorneys through the ordeal of trial. But it is claimed by defendants and admitted by the government that not only could this not have been Garvett's inten-

tion, but that, on the contrary, the court and all attorneys concerned in the reorganization representing all interests knew from the record that Garvett had eliminated himself from any possible fees.

For the obvious reason, therefore, that this part of the indictment is entirely without foundation, we eliminate the question of fees from consideration and this part of the government's indictment is absolutely null.

That brings us to the first question, which is: Did Adelman make a false oath when he represented that he was the owner of this stock?

Our answer is that we doubt very much that his statement can be considered a false oath in a criminal sense and add that if it is, more than one lawyer has been guilty of a similar breach without criminal intent.

The Uniform Stock Transfer Act, C.L. 1929, Section 9540, provides as follows: "The person to whom a certificate was originally issued is the person appearing by the certificate to be the owner thereof, and of the shares represented thereby, until and unless he indorses such certificate to another specified person, and thereupon such other specified person is the person appearing by the certificate to be the owner thereof until and unless he also indorses the certificate to another specified person."

Section 9522 of the same act makes the title holder answerable for calls and assessments on stock held by him while in addition he is entitled to dividends.

Section 9541 states: " 'Title' means legal title and does not include a merely equitable or beneficial ownership or interest".

So, following the above quotations, we would hesitate indicting any man for making an oath on ownership of something that was in his name even though he held only as trustee, unless it appears that there was some malice or purpose behind the questionable false statement.

■ Then, of course, it is necessary that the false oath to be criminal must be upon a material matter. United States v. Slutzky, 3 Cir., 79 F.2d 504.

In the Slutzky case the facts show that defendant went on the stand and was asked if he was the "George Sands" who had been convicted of felony in Patterson, New York. He replied, "No". He was asked if he ever used the alias "George Sands". He replied, "No". He was in-dicted under two counts and was acquitted of conspiracy in the lower court, which was reversed by the upper court because of the possible affect that his perjured testimony might have had upon the jury in the main case.

■ That's not the situation in the case at bar and after all "the materiality of the false testimony as an element in perjury is a question for the trial court to determine." United States v. Slutzky, 3 Cir., 79 F.2d 504, 506. But how material is Adelman's false oath, if it is a false oath?

In this connection it must be borne in mind that the ownership of the stock made absolutely no difference to the court in arriving at his conclusion on the merits of the plan proposed. The company was insolvent. The stockholders had no legal right to vote. They did vote at the request of counsel for some creditors but the stockholders could have all been against this plan and had the creditors accepted the same and the court found it equitable, fair, and just, the court could have approved that acceptance. It was not a question of whether part or all this stock belonged to Garvett or Adelman and particularly is this immaterial when we once eliminate, as we have, the charge that the purpose of the oath was to secure fees.

■ This court believes that it would be extremely unfair and arbitrary to force these two attorneys to trial. Although the court does not place itself in a position where it seeks or finds it necessary to defend the honor of the profession, we cannot help but know and feel that the great majority of attorneys are honest—sometimes much more honest than the clients they represent. The road for an attorney is increasingly a difficult one and there are some who view his every action with suspicion. No one stops to realize that there can be few dishonest attorneys without dishonest clients not attorneys. When you have been in the profession for years and have gained a reputation for integrity, it is such unfortunate occurrences as these that emphasize the fact that one may lose the fruits of those years of honest labor by the inadvertent issuance of an indictment.

The court is reminded that there is an old maxim that "A good reputation is more valuable than money"; that Shakespeare wrote,

"Oh, I have lost my reputation,
I have lost the immortal part of myself";

and that there is a favorite quotation known to everyone that starts out, "Who steals my purse steals trash—".

This court therefore takes judicial notice of the crushing effect of losing one's reputation and resents having any man's good reputation put in jeopardy except under grave circumstances.

Eliminating the question of fees, the court can't find the basis for a charge that any crime has been committed—in fact or in spirit.

Therefore I believe that the plea in abatement of the indictment should be granted as this court would be loath to require any man who has suffered enough by indictment alone to be obliged to go before his peers of the realm on the facts alleged herein and on an indictment which we feel would never have been returned had all facts been presented or available to the grand jury.