**UNITED STATES v. ELIOPOULOS et al.**

Nos. 514c, 567c.

District Court, D. New Jersey.

July 10, 1942.

Charles M. Phillips, U. S. Atty., and Charles A. Stanziale, Asst. U. S. Atty., both of Trenton, N. J., for the Government.

N. Sinclair Robinson, of New York City, Walter G. Winne, of Hackensack, N. J., and Peter A. Cavicchia and Anthony A. Calandra, both of Newark, N. J., for defendant Elias Eliopoulos and another.

FORMAN, District Judge.

On November 18, 1941, a grand jury in New Jersey indicted three brothers, Athanael, Elias and George Eliopoulos, on two counts (Indictment 514c). In the first count it charged that the defendants together with others not named as defendants, between January 1, 1929, and August 1, 1930, conspired to defraud the United States of internal revenue taxes upon narcotic drugs imported into the United States in violation of Title 18 U.S.C.A. § 88. In essence it was charged that the alleged conspiracy contemplated that these defendants while in Paris, France, and other places in Europe schemed to sell to other conspirators named, but not as defendants, large quantities of narcotic drugs to be smuggled into the United States. In order to facilitate this purpose the defendants packed the drugs in cases similar to those used for shoes, glass bulbs and other merchandise and mingled such packages together for shipment to the

United States after giving to the cases of drugs particular identifying numbers. Upon the arrival of these cases in the United States they were secured by the other conspirators. As part of the bargain the other conspirators were to reserve 25 kilograms of each 100 kilograms of drugs which were to be sold for the account of these defendants to whom was to be transmitted the proceeds of such sales. Only one overt act is charged in the indictment, namely that on July 18, 1930, *these defendants* imported into the United States *at Hoboken, New Jersey,* in this district, on board the S. S. Innoko, ten cases of glass bulbs concealed in three of which was a quantity amounting to 100 kilograms of morphine. The second count charged the defendants with the substantive offense of having received, concealed, etc., at Hoboken, New Jersey, 100 kilograms of morphine after it had been fraudulently and unlawfully imported into the United States in violation of Title 21 U.S.C.A. § 174.

On December 18, 1941, the same grand jury presented another indictment (No. 567c) against the defendants. This indictment also contained two counts. The first count charged the same defendants with having on July 18, 1930, violated the revenue laws of the United States relating to the tax imposed by law on the importation of morphine, by importing 220 pounds of morphine (the equivalent of 100 kilograms) and failing to pay taxes on the same. The second count of this indictment charged that on August 1, 1930, the same defendants having imported into the United States on July 18, 1930, about 220 pounds of morphine, and being charged with the duty of making to the Collector of Internal Revenue for the Fifth District of New Jersey a true monthly return of all morphine imported by them, failed to make any monthly return or other return to the said Collector of Internal Revenue.

The defendants Elias and George Eliopoulos (Athanael did not appear) filed a special plea in bar to the first indictment, which was the only one about which they had notice at that time. When their attention was drawn to the second indictment it was agreed that this special plea should be considered as if addressed to both indictments. In it the defendants pleaded that the indictments were not found within either three or six years after the alleged crimes and offenses were committed and therefore the prosecution for such alleged crimes and offenses is barred by the statutes of limitations of the United States.

The government filed a replication denying that the prosecution of the defendants is so barred.

On the issue thus raised it was stipulated that the defendants Elias and George Eliopoulos entered the United States from Greece in 1941; that they were natives of that country and although Elias had visited the United States in 1919 George had never been in the United States prior to their arrival in 1941.

The government abandoned the second count in the first indictment (514c). The first count, charging conspiracy to defraud the United States, remained.

The pertinent parts of the Limitation Statutes found in Title 18 U.S.C.A., under which the defendants seek protection, are as follows: "No person shall be prosecuted, tried, or punished for any offense, not capital, except as provided in section 584 of this title, unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed." 18 U.S.C.A. § 582.

Section 584 applies a five-year limitation to prosecutions arising under the slave trade laws of the United States.

By section 583 the provisions of section 582 are made inapplicable to any person fleeing from justice.

Section 585 provides: "No person shall be prosecuted, tried, or punished for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense. For offenses involving the defrauding or attempting to defraud the United States or any agency thereof, whether by conspiracy or not, and in any manner, the period of limitation shall be six years, which period of limitation shall not apply to acts, offenses, or transactions which were barred by law on June 2, 1924. The time during which the person committing the offense is absent from the district wherein the same is committed shall not be taken as any part of the time limited by law for the commencement of such proceedings. * * *"

The defendants contend that the first indictment charging conspiracy cannot stand for the following reasons:

(1) It charges the defendants with having conspired to defraud the United States of taxes by an agreement or scheme concocted in Europe and for its only overt act alleges that these very defendants imported drugs at Hoboken, New Jersey on July 18, 1930. The government now concedes that the defendants were not in Hoboken on July 18, 1930, or at any other time and therefore the indictment alleges no agreement in New Jersey and has no overt act committed in this district to sustain it.

(2) It is outlawed under section 582 as being presented more than three years after the commission of the alleged offense.

The defendants further submit that the second indictment was obtained obviously to lay the offense under the statute governing limitations upon prosecutions arising under the Internal Revenue Laws of the United States wherein the limitation is tolled where "the person committing the offense is absent from the district wherein the same is committed." § 585. They urge that they were not absent from the district within the meaning of the statute because they were never in the district and whether the limitation is three or six years in their case this indictment cannot stand because it was actually found eleven years after the alleged commission of the offenses.

The government contended that the first indictment in its very language charged the defendants with conspiring to defraud the government of internal revenue taxes and is thus brought within the limitation as qualified in section 585. It submitted that the fact that the defendants had not been in the district placed them within the category of having constructively fled the jurisdiction as contemplated in section 583 or as being "absent" from the jurisdiction as in section 585, and in either or both events the statute would be tolled and the indictment should be sustained.

■ The provision of section 583 does not come into play in this case because the question that the defendants "fled" the jurisdiction cannot be raised. They were never in the jurisdiction except for a visit by one of them in the year 1919 and apparently pursued their ways on the continent of Europe or elsewhere until they arrived in the United States in 1941.

■ It is recognized that there may be a constructive presence in a state, distinct from a personal presence, by which a crime may be consummated, and as the overt acts give jurisdiction for trial in a conspiracy charge it is not essential where the conspiracy is formed, so far as the jurisdiction of the court in which the indictment is found is concerned. Hyde v. United States, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614. We could therefore take jurisdiction of this conspiracy in this district in spite of the fact that the defendants at bar were admittedly not here when the alleged illicit agreement was made if the indictment contained a single overt act alleged to have been committed by any defendant in this district. The latter requirement, however, is not fulfilled here because the *only overt act* charged is that these very defendants imported drugs into the United States *at Hoboken, New Jersey,* on July 18, 1930, when in fact the government concedes that they were not in the United States at that time. A charge of a single overt act upon the part of any one of the numerous alleged co-conspirators might have enmeshed these defendants but this indictment and the stipulation of the government indicates that the conspiracy was formed in so far as their participation was concerned outside of the country and the only overt act alleged to support the indictment charges the impossible importation by them at Hoboken, New Jersey, when at best they could be charged with having exported from Europe. I am constrained to the opinion that this indictment should be quashed for lack of jurisdiction.

Aside from this disposition of the indictment I cannot agree with the contention of the government that it is different from the indictment considered by the United States Supreme Court in the case of United States v. McElvain, 272 U.S. 633, 47 S.Ct. 219, 71 L.Ed. 451. The government contended that because the indictment itself charged that the defendants conspired to defraud the United States of Internal Revenue Taxes it was brought within the limitation as qualified under section 585, but I can see no difference between this indictment and the one in the McElvain case wherein the charge was for "conspiracy to defraud the United

States in respect to its internal revenue." The court comments on such a contention in the following language:

"The proviso relates to substantive offenses involving defrauding or attempts to defraud the United States, whether committed by one or more or by conspiracy or otherwise. It does not extend to any offenses not covered by section 1044 [18 U.S.C.A. § 582]. The crime of conspiracy to commit an offense is distinct from the offense itself. The language of the proviso cannot reasonably be read to include all conspiracies defined by section 37. But if the proviso could be construed to include any conspiracies, obviously it would be limited to those to commit the substantive offenses which it covers." United States v. McElvain, 272 U.S. 633, 639, 47 S.Ct. 219, 220, 71 L.Ed. 451.

This brings us to a consideration of the second indictment. The issue raised under it rests in a very narrow groove. This indictment does charge substantive offenses arising under the Internal Revenue Stattutes of the United States. Whether the offenses charged are ruled by a three-year or six-year limitation is immaterial because the indictment is found admittedly approximately eleven years subsequent to the commission of the alleged offense. Under this statute there is a qualification to the limitation in that "the time during which the person committing the offense is absent from the district wherein the same is committed shall not be taken as any part of the time limited by law for the commencement of such proceedings."

Attention has been directed by both defendants and the government to the case of Brouse v. United States, 1 Cir., 68 F.2d 294. In that case the defendant was indicted for using the mails in a scheme to defraud based on sending four letters from outside the District of Massachusetts to the complaining witness at Boston. The last one was dated October 10, 1929, and the indictment was found on February 15, 1933, more than three years after the alleged commission of the offense.

A plea in bar was filed by the defendant who set up that the indictment was outlawed by the passing of more than three years after the alleged commission of the crime. The government replied that the prosecution was not barred because the "defendant was a person fleeing from the justice of this Honorable Court during the period between the the commission of the offenses and the date of the filing of the indictment." It was stipulated that the defendant was not "actually or physically" in the District of Massachusetts when any of the letters in question was mailed. They were all mailed outside of the District of Massachusetts. The trial court overruled the plea in bar. It was sustained by the First Circuit Court of Appeals. The position of the defendant in that case was that a person cannot be a fugitive from justice in a district in which he was not present at the time when the crime charged was committed, and that constructive presence within a district or state which may be sufficient to warrant *conviction* if the defendant be found there is not sufficient to make him a fugitive from justice. As to this contention the Court says: "That this is so under the extradition statutes seems clear." 68 F.2d at page 295. It then proceeds to differentiate the case before it from an "extradition" case and concludes that the states are independent jurisdictions whose powers do not extend beyond their own borders while the powers of the United States extend through its territory and its districts are merely administrative divisions standing historically and practically on very different footing from the states. The right to arrest a person who violates the federal law in any district where he may be found and remove him for trial to the district where the crime was committed is as broad as the right to prosecute. Under the statute under which Brouse was being prosecuted the delivery of a letter in a district different from that in which it was mailed subjected the defendant to prosecution in the district of delivery. The court reviewed the cases dealing with flight from justice and concluded:

"Whether a person is during any given period a fugitive from justice in the federal courts is, as these decisions make clear, a question of fact to be determined from his acts and intent. There is nothing artificial about it, as there is in extradition cases, no necessity that the defendant should have been actually present in the district where he is wanted for trial and have run from there. The fleeing which tolls the statute is flight from the justice of the United States, not the justice of any particular district." Brouse v. United States, 1 Cir., 68 F.2d 294, 296.

██ In the case before us where the defendants were concededly resident in a

foreign country at the time of the alleged commission of the offenses the reasoning of the above case is certainly in their favor and logically so. It is impossible to conceive of them as fleeing the jurisdiction of the District of New Jersey under the admitted state of facts. The government, however, maintains that even though they did not flee, they were "absent" from the district as contemplated by section 585, and again I cannot agree with the construction it seeks to place upon the statute. Statutes of limitation are founded upon the liberal theory that prosecutions should not be allowed to ferment endlessly in the files of the government to explode only after witnesses and proofs necessary to the protection of the accused have by sheer lapse of time passed beyond availability. No reason is advanced why the government did not indict these defendants within a reasonable and legal period, at least under the "John Doe" nomenclature if no other. Not having done so, the defendants seem to me to be clearly within the purview of the statute and the pleas in bar to indictments 514c and 567c will be sustained.

An order in conformity herewith should be taken.