**UNITED STATES of America**
v.
**Nathan LAUT, Defendant.**

United States District Court,
S. D. New York.
Jan. 25, 1955.

J. Edward Lumbard, U. S. Atty., Frederic S. Nathan, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Freedman & Unger, New York City, for defendant.

BICKS, District Judge.

In the course of his naturalization proceeding, defendant, Nathan Laut, was questioned under oath on June 1, 1950 and again, one year later, on May 3, 1951. More than three years after his 1950 questioning, on April 24, 1954, Laut was indicted on two counts for perjury.[1] Not challenged is the first count which charges that "On or about May 3, 1951," defendant "knowingly" swore falsely when he answered "No" to the question, "Are you now or have you ever been a member of the Communist Party? * * *" Only disputed is the second count which defendant now moves to dismiss as insufficient.

The disputed count begins,[2] "On or about May 3, 1951," defendant "did unlawfully, wilfully and knowingly make a false statement under oath." Defendant

[1]. 18 U.S.C. (1952) § 1015(a) in relevant part provides: "Whoever knowingly makes any false statement under oath, in any * * * proceeding * * * relating to naturalization * * * shall be fined not more than $5,000 or imprisoned not more than five years, or both."

[2]. Count Two, in full, charges:

"2. On or about May 3, 1951, in the Southern District of New York, NATHAN LAUT, the defendant herein, did unlawfully, wilfully and knowingly make a false statement under oath in a matter and proceeding relating to naturalization and citizenship, to wit, during an oral examination in connection with defendant's pending Petition for Naturalization, as follows:

"'Q. Were all of these statements made by you in this statement of June 1, 1950 true and correct to the best of your knowledge and belief? A. Yes.'

the aforesaid statement of defendant being false in that the following answers made by defendant on June 1, 1950, were not true and correct:

"'Q. Have you ever attended any Communist meetings, either as a guest or as a member of the Communist Party? A. No, sir.

"'Q. Have you ever attended any Communist functions or conferences? A. No.

* * * * * *

"'Q. Were you ever in the District Offices of the Communist Party at 208 East 12th Street, New York City? A. No, sir.

* * * * * *

"'Q. Did you ever attend any Communist conferences or conventions anywhere? A. No, sir.'

"[Title 18, United States Code, Section 1015(a)]"

on that date was asked, the count specifies, "Were all of these statements made by you * * * June 1, 1950 true and correct to the best of your knowledge and belief?" After reciting defendant's answer, "Yes," the count then repeats the "aforesaid statement of defendant" was "false".

Explaining this charge, Count Two continues that the 1951 answer "Yes" was "false in that the following answers made by defendant on June 1, 1950 were not true and correct:

"Q. Have you ever attended any Communist meetings, either as a guest or as a member of the Communist Party? A. No, sir.

"Q. Have you ever attended any Communist functions or conferences? A. No.

\* \* \* \* \*

"Q. Were you ever in the District offices of the Communist Party at 208 East 12th Street, New York City? A. No, sir.

\* \* \* \* \*

"Q. Did you ever attend any Communist conferences or conventions anywhere? A. No, sir."

With that answer the count at issue ends.

From its language and plan it seems clear Count Two, in essence, charges Laut with no more than lying in 1951 about telling the truth in 1950. It alleges defendant "On or about May 3, 1951 did * * * knowingly make a false statement" when he then swore "all of * * * [his] statements made by [him] * * * June 1, 1950" were "true and correct". Thus, there charged is false swearing, not directly about material facts, but about the truth of any one of all of defendant's swearings more than three years before indictment.

■ This charge engulfs any one of the most miniscule and irrelevant of "all of * * * [defendant's 18 pages of

1950] statements". The four 1950 answers Count Two alleges were "not true and correct" in no way limit, what other 1950 statements satisfy its blanket terms. As the Government concedes, it "is the rule in this circuit that an indictment for perjury is sufficient if it alleges the falsity of the accused's oath without alleging what the truth was." See United States v. Hiss, 2 Cir., 1950, 185 F.2d 822, 831, certiorari denied 1951, 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683. "Absent surprise", such "language" constitutes no "limitation" on what may satisfy the indictment and indeed may be treated as "surplusage". Id., 185 F.2d at page 831; see also United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 248; Sharron v. United States, 2 Cir., 1926, 11 F.2d 689, 690. Accordingly, to highlight the swath of Count Two, I turn to a few of the some two hundred fifty questions asked defendant at the 1950 hearing.

■ The plan of the Hearing Examiner, the record makes clear, was to probe defendant's past association with the Communist Party or an alleged "front" organization.[3] Searching this issue, the Examiner queried, for example, whether defendant knew "what class of people belong to" the organization. Continuing, he asked, "Do you ever listen to the radio broadcast of Fulton Lewis, Jr.?"; and, after defendant answered, "Once in a while," the Hearing Officer demanded "What is your opinion of his broadcast?" Not content with defendant's answer, "I don't even pay attention to it," the Examiner pressed further, "Is he the mouthpiece of the capitalist class?" Abandoning this line of inquiry, the Hearing Officer, for a final example, then questioned, "Did you ever protest against racial discrimination in the Brooklyn Dodgers baseball game?" (Transcript, p. 15.) These sample queries, by no stretch relevant much less material to

---

3. See 8 U.S.C.A. § 1424.

the issue of association, underscore the fatally broad reach of the disputed charge.

■ Not only does Count Two swallow up the most irrelevant of defendant's 1950 statements, but, equally important, it does not require that such untruths were knowingly or wilfully uttered in 1950. As a result, the slightest mistake in 1950, knowingly repeated in 1951, would warrant conviction. To sustain that count would thus be to make lying itself, apart from the import or relevance of the matter queried, material to the 1951 hearing.

Such a result would in effect read materiality out of the statute and flaunt apparent Congressional purpose. In naturalization proceedings, like most hearings, questions posed range from the trifling to the crucial. Queries may be, as one Court of Appeals recently observed, merely "preliminary in nature", not "themselves pertinent", but asked on the mere "possibility that they might [lead] to later relevant questions." Bowers v. United States, 1953, 92 U.S. App.D.C. 79, 202 F.2d 447, 452. Even relevant questions, moreover, may lack that "substantial degree" of importance needed to make them material. United States v. Lattimore, D.C.Cir.1954, 215

F.2d 847, dissent by Edgerton, J.; see also La Salle v. United States, 10 Cir., 1946, 155 F.2d 452, 454; Pyle v. United States, 1946, 81 U.S.App.D.C. 209, 156 F.2d 852, 856; Central & Southwest Utilities Co. v. Securities and Exchange Commission, 1943, 78 U.S.App.D.C. 37, 136 F.2d 273, 275; Robinson v. United States, 1940, 72 App.D.C. 254, 114 F.2d 475, 476. Enacting Section 1015(a) Congress aimed, not at such trivia, but rather at false testimony likely to mislead immigration or naturalization officials in the conduct of their appointed tasks. So it is that, construing this statute as well as its earliest forerunners, courts have without exception held that, though materiality is not specified, the false statements alleged must be material to the matter at bar.[4] Bridges v. United States, 9 Cir., 1952, 199 F.2d 811, 829, reversed on other grounds 1953, 346 U.S. 209, 73 S.Ct. 1055, 97 L.Ed. 1557; United States v. Bressi, D.C. Wash.1913, 208 F. 369, 371; see also United States v. Sebastiannelli, D.C. M.D.Pa.1933, 3 F.Supp. 698.

■■ To accord with Congressional design, Section 1015(a) should be read in the same light as analogous provisions which specify that false statements charged must be material[5]. And, it

4. 18 U.S.C. (1952) § 1015(a) is derived, practically word for word, from 8 U.S.C. (1940) § 746(a) (1). That later provision, in turn, is based on C. 321, § 80, Act of 1909 which, as part of an overall modification of C. 3592, § 23, Act of 1906, omitted the phrase, following "false testimony," as "to any material fact". An almost contemporaneous construction of the 1909 modification, however, held such omission "immaterial." See United States v. Bressi, D.C.Wash.1913, 208 F. 369, 371. There the government urged that the 1909 reenactment "manifests an intent to omit the phrase 'as to any material fact,' and make false swearing * * perjury whether material or not." Id., at pages 370–371. Rejecting this contention, the Court reasoned the use of the phrase in the 1906 provision was "immaterial" since, construing other sections of the 1906 statute where materiality was

not specified, "courts have uniformly held * * * that the testimony must be material." Id., at page 371. This longstanding and almost contemporaneous construction, never modified by Congress in its subsequent codifications, bespeaks Congressional approval of its view. See Apex Hosiery Co. v. Leader, 1939, 310 U.S. 469, 488, 60 S.Ct. 982, 84 L.Ed. 1311; United States v. Ryan, 1931, 284 U.S. 167, 175, 52 S.Ct. 65, 76 L.Ed. 224; see also Toolson v. New York Yankees, 1953, 346 U.S. 356, 74 S.Ct. 78, 82–83, 98 L.Ed. 64.

5. The same conclusion was apparently reached by the Acting Naturalization Examiner in this very case. Thus, informing defendant of the danger of perjury, the Examiner warned at the 1950 hearing "If you wilfully and knowingly give false testimony *concerning a material fact* during these proceedings, you may

seems to me clear, as one Court of Appeals recently held, that materiality or "pertinency" is not a mere "personal privilege * * * waived if not seasonably asserted" by refusal "to answer a question which is not pertinent", but instead an essential "element of the criminal offense which must be shown by the prosecution." Bowers v. United States, 1953, 92 U.S.App.D.C. 79, 202 F.2d 447, 452; see also United States v. Lattimore, D.C.Cir.1954, 215 F.2d 847. Where materiality is not shown, the indictment thus must fail. See Bowers v. United States, 1953, 92 U.S.App.D.C. 79, 202 F.2d 447, 452; United States v. Garvett, D.C.E.D.Mich.1940, 35 F. Supp. 644; United States v. Seymour, D.C.D.Neb.1931, 50 F.2d 930; United States v. Cameron, D.C.D.Ariz.1922, 282 F. 684; United States v. Rhodes, D.C. S.D.Ala.1913, 212 F. 518; United States v. Pettus, C.C.W.D.Tenn.1897, 84 F. 791; United States v. Perdue, D.C.W.D. Pa.1880, 4 F. 897.

■ Beyond doubt, Count Two charges no probably material false statement. Alleged only is that defendant in 1951 knowingly lied about the truth of any of his 1950 statements. Since many of defendant's 1950 answers were not then material, lying about the truth of any one of them one year later, during rehearing of the same issue, must likewise be immaterial [6]. Apart from this defect under Section 1015(a), this pervasive charge, in addition, falls since it "fail[s] to inform the defendant of the definite portions of his testimony which were material to the inquiry." United States v. Seymour, D.C.Neb.1931, 50 F.2d 930, 940; see also F.R.Crim. Proc. 7(c), 18 U.S.C.

■ Generally, it is true, where the charge "as appears upon the face of the indictment" is "within the realm of materiality" defendant will be put to trial and materiality considered at the close of the Government's case. United States v. Lattimore, D.C.Cir. 1954, 215 F.2d 847, 852; see also United States v. Meyers, D.C.D.C., 75 F.Supp. 486, 488, affirmed as to this point sub nom. Meyers v. United States, 1948, 84 U.S.App.D.C. 101, 171 F.2d 800, 11 A.L.R.2d 1. Equally true, however, it " 'is undoubtedly necessary that it should appear on the face of the indictment that the false allegations were material to the matter in issue. * * * [T]he facts set forth as falsely * * * sworn to should be sufficient in themselves to show such materiality.' " Markham v. United States, 1895, 160 U.S. 319, 325, 16 S.Ct. 288, 291, 40 L.Ed. 441. Such facts may "not be left to surmise or to be reached by way of inference or argument." Danaher v. United States, 8 Cir., 1930, 39 F.2d 325, 327; see United States v. Seymour,

be prosecuted for the crime of perjury." (*Emphasis added*, Transcript 1950 Hearing, pp. 1–2.) In like fashion the Examiner warned again at the 1951 hearing, that "If you wilfully and knowingly give false testimony *concerning a material fact* during these proceedings, you may be prosecuted for the crime of perjury." (*Emphasis added*, Transcript 1951 Hearing, p. 1.)

6. Even were materiality not an element of the crime under § 1015(a), Count Two would nonetheless fall as embracing 1950 statements of patently *de minimis* import. Thus even those who would strike materiality as prerequisite to perjury would not punish testimony as to "idle and insignificant" matters. The New York State Law Revision Commission, for example, recommending definition of a crime of second degree perjury with no element of materiality, excludes from that crime "the wholly trivial and insignificant, on a principle analogous to the maxim 'De minimis non curat lex.' " Ann.Rep.N.Y. Law Rev.Comm. (1935) 243. In like fashion, the Model Act on Perjury, sponsored by the National Conference of Commissioners on Uniform State Laws as well as by the American Bar Association, suggests dropping the requirement of materiality and adds that, even then, "an irrelevant, inconsequential statement would not come within" the Act. Handbook, Nat.Conf. of Com'rs Uniform State Laws, 405 (1952).

D.C.Neb.1931, 50 F.2d 930, 940; see also United States v. Young, D.C.D.C. 1953, 113 F.Supp. 20, 21. And, where false statements charged are not even probably material, the indictment may be dismissed without putting defendant to the mere ceremony of trial. See United States v. Garvett, D.C.E.D.Mich. 1940, 35 F.Supp. 644; United States v. Seymour, D.C.D.Neb.1931, 50 F.2d 930; United States v. Cameron, D.C.D.Ariz. 1922, 282 F. 684; United States v. Rhodes, D.C.S.D.Ala.1913, 212 F. 518; United States v. Pettus, C.C.W.D.Tenn. 1897, 84 F. 791; United States v. Perdue, D.C.W.D.Pa.1880, 4 F. 897; see also Rule 12(b) (1), F.R.Crim.Proc.

■ Beyond this defect, however, Count Two in addition runs afoul of the Statute of Limitations. 18 U.S.C. (1952) § 3282. There Congress sought to balance the Government's need for a fair chance to begin prosecution against the travail of a defense founded on evidence faded by passage of years. See Chase Securities Corp. v. Donaldson, 1944, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628; Order of Railroad Telegraphers v. Railway Express Agency, 1943, 321 U.S. 342, 348–349, 64 S.Ct. 582, 88 L.Ed. 788; United States v. Eliopoulos, D.C.D.N.J.1942, 45 F.Supp. 777, 781. The resulting three year bar on prosecution of non-capital offenses [7] embodies, the Supreme Court recently observed, "a long-standing congressional 'policy of repose' that is fundamental to our society and our criminal law."

Bridges v. United States, 1953, 346 U.S. 209, 215–216, 73 S.Ct. 1055, 1059, 97 L.Ed. 1557. Applying this general "policy" our settled guide is that "it is to be liberally interpreted in favor of repose". United States v. Scharton, 1931, 285 U.S. 518, 521–522, 52 S.Ct. 416, 417, 76 L.Ed. 917. See also Kavanagh v. Noble, 1947, 332 U.S. 535, 539, 68 S.Ct. 235, 92 L.Ed. 150; Independent Coal & Coke Co. v. United States, 1927, 274 U.S. 640, 650, 47 S.Ct. 714, 71 L.Ed. 1270; United States v. Whited & Wheless, 1917, 246 U.S. 552, 561, 38 S.Ct. 367, 62 L.Ed. 879.

■ The count at bar charges, in form, false swearing in 1951, but in substance, the untruth of any one of all defendant's swearings, in 1950, over three years before indictment. Consider, for example, the Government's proof at trial of the issue of whether defendant lied in 1951 when he asserted the truth of his 1950 answer "No" to the question, "Isn't it a fact that you are * * * a member of the Communist Party * * *?" Transcript 1950 Hearing, p. 16. The crime of perjury, recall, consists of a false statement of belief generally inferrable from proof of a false statement of fact [8]. The Government's proof would consist, then, of various overt acts, around 1950, from which the court might permit a jury to find membership in 1950. United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 249. Defendant must be shown in 1951 simply to have recol-

---

7. By Act Sept. 1, 1954, c. 1214, § 10(a), 68 Stat. 1145 the limitation period has been extended to five years.

8. See e. g. United States v. Hiss, 2 Cir., 1950, 185 F.2d 822. True where the fact sworn to is a status susceptible to differing definition—membership in the Communist Party—the trial judge may be required to "single out such 'overt acts' as furnish a rational basis for inferring [membership and that] * * * the accused must have believed he was a member". United States v. Remington, 2 Cir., 1951, 191 F.2d 246, 249. And, in the ex-

ceptional case, where the act testified to occurred "24 years before the examination at which * * * perjury is charged to have been committed", something "more is necessary to convict than proof that the act, not remembered, did in fact occur." Fotie v. United States, 8 Cir., 1943, 137 F.2d 831, 842. But cases thus far have held "If * * * answers * * were legally truthful," the accused "cannot be held for perjury." United States v. Slutzky, 3 Cir., 1935, 79 F.2d 504, 505; see also Commonwealth v. Miles, 1910, 140 Ky. 577, 131 S.W. 385.

lected his 1950 statement and to have asserted its truth. Thus the crux of any 1951 lie, it seems clear, is an untruth, outside the statutory period, in 1950.

Sustaining such procedure would permit dodging the Statute of Limitations at will. Any witness once questioned in detail could each three years simply be asked, again under oath, whether all statements at the previous hearing were true. Since each hearing would be within three years of its predecessor, he could not, without fear of perjury, contradict himself. Were each reassertion of an original statement's truth to constitute a new offense, the Government could thus prove a crime simply by showing an original untruth, no matter how ancient, plus its recollection and reassertion within three years of indictment. Cf. Fotie v. United States, 8 Cir., 1943, 137 F.2d 831, 842. Such a result would be openly at war with the "theory", on which "Statutes of Limitation are founded * * * that prosecutions should not be allowed to ferment endlessly in the files * * * to explode only after witnesses and proofs necessary to the protection of the accused have by sheer lapse of time passed beyond availability." United States v. Eliopoulos, D.C.D.N.J.1942, 45 F.Supp. 777, 781; see also Chase Securities Corp. v. Donaldson, 1944, 325 U.S. 304, 314, 65 S.Ct. 1137, 89 L.Ed. 1628.

No remedy to this defect is the fact that the Government—in 1951—might, for example, properly have asked, and prosecuted for falsely answering, "Are you now a member of the Communist Party?" or "Have you ever been one?" An answer as to 1951 membership might be, unlike present Count Two, proved or disproved primarily by overt acts within the statutory period. Similarily, even though in a naturalization proceeding past membership may be material ten years before petition, 8 U.S.C. (1952) 1424(c), 8 U.S.C.A. § 1424(c), the Government, by asking again for the truth of a past denial, may not in a perjury prosecution push evidence required to disprove such prior membership further and further beyond a witness' grasp.

Accordingly, Count Two should be and is hereby ordered dismissed. The motion for a bill of particulars is disposed of as indicated on the argument.