## State *v.* Gates.

Evidence that a witness was sworn to tell the whole truth, and nothing but the truth, is sufficient to sustain an allegation in an indictment for perjury, that he was sworn to tell "the truth, the whole truth, and nothing but the truth."

It is perjury if one swear that a certain fact did not occur at a certain time and place, if the witness did not know whether it did or did not occur.

Evidence is not admissible to prove that the principal witness on a trial for perjury had made an offer to the prisoner to withdraw for a sum of money.

INDICTMENT for perjury, in which it was alleged that at the court of common pleas holden at Haverhill, in the county of Grafton, on the first Tuesday of February, 1844, a certain issue duly joined one Thomas Potter and one Henry George in a plea of the case, in which Potter was plaintiff and George was defendant, came on to be tried in due form of law, and was then and there tried by a certain jury of the country in that behalf, duly impaneled and sworn between the said parties, and that upon the trial of the said issue, so joined between the parties, one William Gates, of Lebanon, appeared as a witness for and on behalf of George, the defendant, and was duly

sworn, and then and there took his corporal oath to speak the truth, the whole truth and nothing but the truth, concerning the matter in question in said issue; and that upon the trial of the said issue certain questions then and there became and were material, that is to say, whether George, the defendant, did warrant a certain mare which he (George) had swapped and exchanged with Potter for another certain mare of Potter's, to be a sound mare, and whether the witness was present when the exchange took place.

To which the respondent answered in substance as follows: That George, at the time he swapped and exchanged mares with Potter, did not warrant his mare to be sound, and that he (witness) was present when George and Potter swapped and exchanged their mares, and that George refused to warrant his mare sound; whereas in truth and in fact George, at the time he swapped and exchanged mares with Potter, did warrant his mare to be sound; and whereas Gates, at the time George and the said Potter swapped and exchanged mares, was not present; and whereas the said George did then and there, at the time he swapped and exchanged mares with Potter, warrant his mare to be sound, and that Gates well knew that he was not present when George and Potter swapped and exchanged mares, and that he did not know whether George warranted his mare or not, &c.

Upon the trial the defendant offered to prove that Thomas Potter, a witness for the government, had made offers to the defendant to settle with him, and not prosecute him, if the defendant would pay him a certain sum of money; to which the State's counsel objected, and the court ruled that the evidence was not admissible.

The jury returned a verdict of guilty, and the defendant moved to set aside the verdict, and for arrest of judgment, and for a new trial, for the aforesaid misruling of the court, and for the causes following, to wit:

State *v.* Gage.

1. Because the indictment alleges that the defendant was sworn to "tell the truth, the whole truth, and nothing but the truth," and the evidence was that he was sworn to "tell the truth and nothing but the truth."

2. Because it is not alleged in the indictment that the defendant knew that one branch of the testimony described in the charge against him was false, when he testified.

3. Because the indictment is in other respects defective and bad.

*Perley & Quincy*, for the defendant. As to the variance between the allegation and the evidence, the statute has prescribed a form for administering oaths, and the court cannot vary from it. An allegation that the defendant swore upon the holy evangelists is not proved by evidence of an oath administered in any other form, though binding upon the conscience. Peake 155. The oath alleged is not proved.

The state of the witness's mind is material. The defendant may show it, and so impeach his testimony. The witness was the complainant, and the party to the suit in which the perjury was alleged to have been committed. 16 Mass. 188; 1 Stark. Ev. 135; 2 Camp. 638.

*Sargeant*, Solicitor, for the State. The evidence rejected would not show the witness prejudiced for or against the prisoner, but only the existence of a sordid mind. If his offer was not accepted, he would not be more likely to swear falsely. If a witness swear that he did dissuade another from appearing, you cannot contradict his statement. Archb. Cr. Pl. 144; 2 Camp. 637; 11 Wend. 16, *People* v. *Benning*.

As to the alleged variance. It is necessary to prove the facts in substance as laid. Arch. Cr. Pl. 534; St. Cr. Pl. 265, 266. The statute does not prescribe a form of oath to witnesses on the stand, as it does to deponents.

If it be necessary to allege and to prove that he knew that he swore falsely, the indictment is bad; but it is not necessary so to allege. It is perjury if he swear to that as true which he does not know to be so, and that whether it be true or not. Archb. Cr. Pl. 538. But the whole averment is surplusage. It need not be averred that he knew that to be false which he has ignorantly sworn to as a fact. If he falsely swear to his belief, it is necessary to allege that he knew the contrary to be true. 2 Chit. Cr. L. 311, 312.

Such an averment is not in the forms of indictment for perjury. It is omitted when the allegation is that he swore to a fact as within his knowledge.

GILCHRIST, J. The indictment alleges that the defendant "took his corporal oath to tell the truth, the whole truth and nothing but the truth;" and it is necessary, for his conviction of perjury, that this allegation be substantially proved. The case cited by his counsel from Peake is authority to show that an averment, describing the form or manner in which the oath was administered, must be proved, or the variance will be fatal. The evidence is that he was sworn to tell "the whole truth and nothing but the truth," and the question is, whether that evidence supports the allegation. The statute prescribes no form of words for administering an oath to witnesses in court, and is express that no other ceremony shall be deemed necessary in swearing than holding up the right hand; Rev. Stat., chap. 188, sec. 10; although in taking depositions it is necessary that the party should be sworn that the deposition contains "the truth, the whole truth, and nothing but the truth."

There is therefore no doubt that the defendant was properly and legally sworn, in the manner that appears by the evidence, to tell the whole truth, and to tell nothing but the truth relative to the cause. Now it is difficult to perceive any difference between telling the truth and

the whole truth, and telling the whole truth. The two expressions signify precisely the same thing. It is impossible to tell more truth than the whole truth.

In the case of *Rand* v. *Dodge* (*ante*, page 344), we have held, that where it appeared by the caption that the witness swore that the deposition contained " the whole truth and nothing but the truth," it was capable of being amended, because it showed a substantial compliance with the statute, and a state of facts sufficient to justify his certificate to the effect that the deponent had sworn that the deposition contained " the truth, the whole truth, and nothing but the truth." We held in that case that the statute required that form in depositions, and that the caption might be amended so as to show it.

We think the evidence sufficient to sustain the allegation in the indictment.

The second objection to the verdict is, that it is not alleged in the indictment that the defendant knew that one part of his testimony was false.

The law on this subject is stated by Hawkins to be, that " it is not material whether the fact which is sworn to be in itself true or false ; for however the thing sworn may happen to prove agreeable to the truth, yet if it were not known to be so by him who swears to it, his offence is altogether as great as if it had been false ; inasmuch as he willfully swears that he knows a thing to be true which at the same time he knows nothing of, and impudently endeavors to induce those before whom he swears to proceed upon the credit of a deposition which any stranger might make as well as he. Hawk. P. C., book 1, ch. 69, Perjury, sec. 6.

The allegation in the indictment is, that the defendant swore that he was present at the time Henry George and Thomas Potter exchanged mares, and that the said Henry George did refuse to warrant his mare sound ; and that

the defendant, on the contrary, was not present; that he well knew that he was not present, " and that he did not know whether said George so warranted his mare or not." The material averment is, that he swore to the material fact, and that he did not know whether it was true or not. This seems to be all that is required to bring the act charged within the description of perjury, which consists not only in swearing to material things, known not to be true, but in swearing to them without any knowledge on the subject.

As to the evidence concerning the offer made by the prosecutor, which was ruled out by the court. There is a case in point in 11 Wendell 19. " Conly was the principal witness for the prosecution, and the counsel for the defendant, upon his cross-examination, offered to prove by him that he had frequently, during the present session of the court, offered to the prisoner that if he would settle the subject matter of the indictment, he, the witness, would leave the court, and not appear against him. This testimony was objected to by the counsel, and was excluded by the court. I think it was properly excluded. It could legitimately have had no influence with the jury. It did not tend in the slightest degree to impeach the testimony of the witness, or to show that his narration was not true. Admitting that he had improperly endeavored to compromise the prosecution, his positive testimony in relation to the fraudulent conduct of the prisoner was not thereby impeached."

In *Harris* v. *Tippett*, 2 Camp. 687, it was held, that questions relating to the conduct of the witness, in connection with the cause or the party, might be asked upon the cross-examination of the witness himself; but that other witnesses should not be examined to the same point, because an issue would thus be raised, collateral to the principal one, and not concerning the rights of the parties. The matter proposed to be inquired into was an al-

leged attempt of the witness to dissuade another from testifying for the opposite side.

We cite these two cases as containing a reasonable and satisfactory illustration of a doctrine, of which it is not easy to derive from the authorities a formula that reconciles all of them. The evidence to which a party is confined is that which is material to the issue. It is material to prove that a witness who testifies is hostile to a party, or has a particular motive for desiring that the verdict should be against him. You may therefore prove, by any competent evidence, that the witness has sworn to be revenged upon the party for some real or imagined injury ; *Yewin's* case, stated by *Lawrence,* J., in *Harris* v. *Tippett,* 2 Camp. 637 ; or that the witness and the party have a controversy, or the like. 2 Cow. & Hill's Phil. 730 (in note 509 to page 273) ; Greenl. Ev., sec. 462. But particular facts and occurrences of such a nature as to create the supposed hostility, or to induce the suspicion of its existence, cannot be proved, except as they may be drawn from the witness himself on cross-examination. They are not conclusive in their effect, and therefore not admitted to be so far material to the issue as to be allowed to become the subject of dispute at the trial.

So far as the tendency of the evidence rejected in this case was to show that the prosecutor was urged by sordid motives, it showed that the unworthy motives were removed at the time when he testified. The evidence was not conclusive, certainly, to prove the existence of others.

*Judgment on the verdict.*