## FOTIE v. UNITED STATES.
### No. 12294.

Circuit Court of Appeals, Eighth Circuit.

Aug. 23, 1943.

Forest W. Hanna and Bernard T. Hurwitz, both of Kansas City, Mo., for appellant.

Richard K. Phelps, Asst. U. S. Atty., of Kansas City, Mo. (Maurice M. Milligan, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, RIDDICK, and VAN VALKENBURGH, Circuit Judges.

RIDDICK, Circuit Judge.

On consideration of the petition for rehearing in this case, the opinion of the court filed May 1, 1943, is withdrawn for the reasons hereinafter appearing.

Two indictments were returned against the appellant in the district court, the first, No. 15,228, charging him with violation of § 79 of the Criminal Code, 18 U.S.C.A. § 141, and the second, No. 15,239, in three counts, charging him with the crime of perjury under § 125 of the Criminal Code, 18 U.S.C.A. § 231. In the first indictment, the charge was that the appellant "on or about the 8th day of November, 1938, wilfully, knowingly, unlawfully, falsely, fraudulently and feloniously did represent himself to be a citizen of the United States, for the fraudulent purpose then and there to

vote in the General Election being held on said 11th day of November, 1938, for candidates for various offices, the County of Jackson, the State of Missouri, and of the United States, by stating that he was born in the state of West Virginia, in the United States of America, when he, the said Joseph A. Foti then and there well knew that he was born in Gioiosa Province of Reggio de Calabria, Italy." The second indictment charged appellant in three counts with the crime of perjury in giving certain testimony under oath at a hearing being conducted by a district director of immigration and naturalization in Kansas City.

By stipulation the cases were consolidated for trial before the court without a jury. Appellant was adjudged guilty as charged in each indictment, and his appeals from the judgments of conviction have been consolidated for hearing in this court. The result of this procedure is a record containing much evidence that pertains to both indictments and some which relates only to the first indictment and to the separate counts contained in the second indictment. The evidence pertaining to both indictments is summarized here, and that which pertains only to a particular indictment or one of its counts is stated in the separate discussions of them which follow.

At intervals over a period of approximately 25 years, beginning in 1917, the Government has prosecuted deportation proceedings against the appellant. In each proceeding appellant was sworn and subjected to a searching cross-examination concerning his origin and his life in this country and abroad. In these examinations appellant made conflicting statements concerning the time and place of his birth and as to the basis of his claim that he was a citizen of the United States. He stoutly maintained that he was a citizen of this country, but on all occasions the sum of his testimony was that he did not know where or when he was born. He based his testimony concerning the place and time of his birth upon information obtained by him from inquiries among the members of his family in Italy. If appellant's testimony is believed, he does not know where he was born nor whether he was born in January 1887 or January 1889. He explains his conflicting statements concerning the place of his birth in this country by the claim that, as he pursued his investigations

in the matter during the deportation proceedings, he obtained information from time to time which caused him to change his original belief.

It is established by the evidence that appellant was in this country as early as 1900 when he was either 11 or 13 years of age. Appellant claims that following his birth in this country he was taken to Italy as an infant by his father and mother. He thinks that his birth may have been registered there under the requirements of Italian law, but he remembers that he returned to this country at an early age with an uncle. He testified that he lived for a time with his uncle in Brooklyn, and later went with him to West Virginia where he remained until he was sent to Philadelphia to school. In 1907 he went on a visit to his parents in Italy, returning to this country in December of that year, again going to West Virginia. He was then either 18 or 20 years of age. His entry into the United States on this occasion was admitted by the Government. A witness for the prosecution introduced in evidence a volume kept in the immigration office at the port of New York which contained records pertaining to immigrants and passengers entering the United States at that port. The entries were taken from the manifests of ships arriving at the port of New York, certified to the immigration office by ship officers. The record showed that appellant was among the passengers arriving at the port of New York on December 21, 1907, on the steamship Konigin Luise, that his age was 20 years, occupation workman, destination New York, place of birth, Italy, that he had been in this country from 1900 to 1907. The Government witness who introduced this record testified that the original ship's manifest was made up by some officer of the vessel from information presumably obtained from the passengers at the port of embarkation, and that the inspection made at the port of debarkation was a cursory one as the passengers passed by the immigration inspector on leaving the vessel. The witness had no personal knowledge concerning the matters shown by the record nor concerning its preparation, but based his testimony upon his understanding of the methods followed by ship officers in making up a manifest and of the manner in which the record in his possession was compiled. The Government also introduced a certified copy of the certificate of admission issued to the appellant at the time of his arrival

on the steamship Konigin Luise. Its recitals likewise were taken from the manifest of that steamship. They were the same as those contained in the records of the immigration office at the port of New York.

In 1914 the appellant made a second trip to Italy, arriving there about the time the first World War began. He was threatened with induction into the Italian Army, but, through the aid of an American consul in Italy, he was able to return to this country shortly after his arrival. He testified that he went to and returned from Italy on this occasion as an American citizen. The Government offered no evidence to the contrary. In 1917, while living in St. Louis, he registered for the draft as an American citizen. In 1920 appellant made a third trip to Italy, and on this occasion he remained there about nine years, taking with him his American wife and family, but he denied any intention of remaining in Italy permanently or of abandoning his claim to American citizenship.

While appellant was abroad on the trip last mentioned, he was employed first by an Italian firm, and later by a firm in Paris, France. He returned to this country in 1929 in company with a number of employees of the Paris firm, entering the United States at Laredo, Texas, in transit to Winnipeg, Canada. Appellant testified that on the occasion of his trip to Italy in 1920 he traveled as an American citizen. On his return in 1929 his testimony was that the arrangements for his entry into this country were made by his employers, who had construction work at Winnipeg, Canada, to which point they were transporting a number of their employees. For this reason appellant says he does not know whether he entered the United States as a citizen of the United States or of some other country, but he admits that, instead of going to Winnipeg, Canada, as his employers intended, he went to Missouri where his wife and children were living, they having returned to this country at an earlier date, and moved them to Kansas City, Missouri, where he has since resided. The Government conceded that appellant did enter this country at Laredo, Texas, in 1929, but it was unable to produce any records of his entry in evidence. It was permitted to introduce over objection of the appellant a copy of the record of the entry of a person by the name of Correale, an Italian, who entered the United States at Laredo, Texas, in 1929 in transit to Winnipeg, Canada. There was no evidence to show that Correale and appellant were one and the same person.

The first of the deportation proceedings against appellant began in St. Louis in January 1917. Appellant then testified that the basis of his belief that he was a citizen of the United States was his understanding that his father and mother were residents of this country at the time of appellant's birth and that his father had been naturalized. These proceedings were terminated by the Government late in 1918 on a finding that the proof was not sufficient to sustain the charge against appellant. While they were in progress, appellant filed in the District Court at St. Louis, Missouri, his declaration of intention to become a citizen of the United States. In that declaration he swore that he was born in Italy and was a subject of the Italian king. No further steps were taken in this proceeding.

Deportation proceedings, which began against appellant in 1933, were renewed in 1936, and continued at intervals through 1939, and produced little or no new information. The efforts of the Government to obtain proof in Italy of appellant's birth there were fruitless. Appellant could produce none to establish definitely his birth in this country. Representatives of the Government in charge of the investigation of appellant reached the conclusion that the weight of the evidence pointed to his birth in Italy and to his Italian citizenship, but they also reached the conclusion that appellant had acted in good faith with the Government.

In the meantime appellant had been divorced by his first wife and had remarried. With his second wife he acquired the ownership of a business in Kansas City employing eighteen persons. He was the father of six children, all residents of this country. He had entered this country as a boy. He had certainly been a resident of the United States for approximately 40 years, with the exception of the time occupied in trips abroad, living in New York, West Virginia, Ohio, Illinois, and Missouri. In view of these circumstances, immigration officials of the Government again suspended the deportation proceedings to allow appellant to depart from this country for the purpose of returning and obtaining lawful admission. The appellant made the effort to leave the United States, but on pre-examination in his endeavor to obtain an immigrant's visa

from an American consul, he was unable to furnish the required documents showing birth in Italy, and therefore, was unable to depart from the United States voluntarily and return with a visa as an Italian citizen, as had been recommended by immigration officials. This effort by appellant to depart from the United States and to re-enter was made by him in an effort to bring the deportation proceedings to a conclusion and under an agreement with officials of the Government that he did not thereby waive his claim to citizenship in the United States, but that for the purpose of departure and return he would make the necessary claim to Italian citizenship in the hope that in this manner the deportation proceedings might be concluded.

In this state of affairs an immigration inspector at Kansas City suggested as a means of bringing the matter to a close that appellant have introduced in Congress a private bill to legalize his latest entry into the United States at Laredo, Texas, in February 1929. Appellant adopted this suggestion and the bill was introduced, his counsel taking a copy of a similar bill in possession of immigration officials in Kansas City as a model for the bill on behalf of appellant. Following the introduction of this bill in Congress, the appellant, on April 28, 1941, filed with the Department of Justice his application for suspension of the deportation proceedings and for approval of his bill. As required in the case of such applications, appellant presented with the application a general information form on a blank furnished by the Government. In response to the application for approval of his bill in Congress, a final investigation of the appellant was instituted by the Department of Justice, in charge of the District Director of Immigration and Naturalization in Kansas City. This hearing began on May 23, 1941, and was concluded on May 27, 1941. On the agreement that the transcript of the testimony of himself and other witnesses should be furnished to him, appellant agreed to appear in this hearing and testify. He was again sworn and subjected to the most minute and searching inquiry, not only concerning all of the matters on which he had been examined in the deportation proceedings and concerning which the Government already had in its possession all the information which such an examination could elicit, but also concerning his recollection of his testimony at these hearings. This

proceeding brought to light appellant's declaration of intention to become an American citizen while in St. Louis in 1917, and also that he had registered under the Alien Registration Act, 8 U.S.C.A. §§ 451–460, on December 26, 1940, stating, however, in his application for registration that he was an American citizen, born in West Virginia, but unable to prove it. Following this hearing the immigration officials at Kansas City recommended to their superiors in Washington that steps be taken to indict the appellant for perjury committed in his testimony at that hearing. The recommendation was disapproved on the ground that it could not succeed in the absence of proof by the United States that appellant was a citizen of Italy. Nevertheless, the indictments involved here were returned.

The evidence which we have stated comes in greater part not from witnesses who appeared at the trial, but in the form of certified copies of the transcripts of the various deportation proceedings brought against the appellant and a certified copy of the transcript of the proceeding conducted by immigration officers in response to appellant's request for approval of a private bill which he caused to be introduced in Congress to legalize his entry into this country. These transcripts were certified by an Assistant to the Attorney General of the United States as true copies of records on file in the Department of Justice, but, as introduced in evidence, they contained not only the testimony of the appellant at the hearings in question, but a statement of the charge against appellant in the particular proceeding involved, testimony concerning those charges whether or not relating to his citizenship, the conclusions and recommendations of the immigration inspector conducting the hearing, and the conclusions of officers of the Immigration and Naturalization Service, Department of Justice, upon review of the record made in the Bureau. This evidence was offered by the Government in support of each charge in both indictments and for the purpose of proving the Italian citizenship of the appellant. In addition to the foregoing, certain witnesses were produced at the trial who testified concerning the admissions of Italian birth made by appellant on various occasions prior to his indictment. Some of these admissions were made in casual conversations, and none of them in circumstances, as far as the record

goes, in which the question of appellant's citizenship was material or important in any proceeding then going forward.

The learned trial judge reached the conclusion that appellant was an alien, and, knowing that he was not a citizen of this country, had falsely represented and sworn that he was. For reversal of the judgments of conviction, appellant contends that the Government failed to carry the burden of proving that appellant was guilty of any of the charges against him, that incompetent and prejudicial evidence was received and given weight by the district judge, and that the charge made in the first indictment was barred by limitations.

### The First Indictment

■ So far as material here, the statute under which this indictment is brought provides that " * * * whoever, for any fraudulent purpose whatever, shall falsely represent himself to be a citizen of the United States without having been duly admitted to citizenship, shall be fined not more than $1,000, or imprisoned not more than two years, or both." 18 U.S.C.A. § 141. The specific charge contained in the indictment is that the appellant falsely represented that he was a citizen of the United States for the purpose of voting in a general election for state and federal officers held in Kansas City, Missouri, on November 11, 1938, by stating that he was born in the United States when he knew he was born in Italy. The evidence relating only to this indictment established beyond question that, pursuant to the requirements of the Act of Missouri of 1937, Mo.R.S.A. § 12095 et seq., governing the registration of voters in Kansas City, appellant on December 10, 1937, made an application for registration as a voter, representing that he was born in West Virginia on January 28, 1889. This application was followed by an affidavit made on February 3, 1938, in which he made the same representation. The indictment was returned on October 4, 1941. There was no evidence that appellant made any of the specific representations concerning his birth which were charged in the indictment, except in his application and affidavit for registration. Whether he voted in the election of November 11, 1938, was under the conflicting evidence on the point a question for the trier of the facts. It was not contended that at the time of voting appellant made any representation concerning his citizenship.

■ The representations concerning his citizenship made by appellant in 1937 and 1938 were, if false and made for a fraudulent purpose, sufficient to constitute a violation of the statute under which the indictment was brought. Green v. United States, 9 Cir., 150 F. 560; Gulotta v. United States, 8 Cir., 113 F.2d 683. But these representations were made more than three years before the return of the indictment on which appellant was tried. It follows that unless it can be said that the act of voting by an alien, without more, constitutes a false representation of citizenship for a fraudulent purpose within the meaning of the statute and within the charge in the indictment, the charge against appellant was barred by limitations, 18 U.S.C.A. § 582.

In the original opinion we said on this point: "Conceding that the appellant did vote in the election of 1938, we think the mere act of voting was not a false representation of citizenship for a fraudulent purpose within the meaning of the Act in question nor within the charge made in the indictment. The last representation of citizenship for a fraudulent purpose under the Government's proof was made on February 3, 1938. The subsequent act of voting, if it occurred, was the consummation of the fraudulent purpose intended when the representation of citizenship was made."

We have been unable to find any decisions in the federal courts upon the question, but, upon further consideration, we reach the conclusion that the holding that the mere act of voting by an alien is not, in any circumstances, in itself a false representation of citizenship for a fraudulent purpose within the meaning of the Act under which this indictment is drawn is incorrect. Moreover, the decision of the question was not necessary in the case before us, and, for that reason should not be, and is not, decided. This conclusion makes necessary a more detailed consideration of the evidence on this indictment, and of the court's ruling on its admissibility than was attempted in the original opinion. Since the case must be tried again, that opinion is withdrawn.

■ Conceding that the first indictment charges a false representation of citizenship by appellant by voting in the election mentioned in the indictment, we turn to the question of the sufficiency of the evidence to support his conviction. To

warrant a conviction, the burden was upon the Government to prove beyond a reasonable doubt that for the fraudulent purpose of voting in a general election for state and federal officers, the appellant, an alien, knowingly and falsely represented himself to be a citizen of the United States. Gulotta v. United States, supra. In the case cited, Gulotta registered as a voter, stating that he was born in the United States and was a citizen of the United States. To prove that his representations were false and that he was in fact a citizen of Italy, the Government relied upon admissions and confessions of Italian birth and Italian citizenship. It was held that proof of such admissions and confessions without more was not sufficient to sustain the burden upon the Government. The decision was based on the established rule that, to authorize conviction of a crime, independent evidence of the corpus delicti is necessary to corroborate the defendant's admissions and confessions.

Warszower v. United States, 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876, was decided after the decision of this court in the Gulotta case. In the Warszower case, it was held that where a defendant is charged with making a false statement, as distinguished from a false oath, proof of his admissions contrary to the statement charged made prior to the act charged in the indictment justified the submission of the question of guilt to the jury. The court held that admissions made by an accused before indictment inconsistent with statements, which, if false, resulted in the commission of the crime charged, were admissible in evidence and sufficient to support a conviction without corroborative proof.

■■ It is important to note, however, that in the Warszower case the admissions of defendant held sufficient to sustain the conviction were all material to the matter in progress at the time they were made. They were also directly in conflict with the statement, the falsity of which was charged in the indictment, and they were made without qualification or reservation. In the present case the same proof which brings into the record the admissions on the part of appellant relied on as disproving his claim of citizenship also brings into the record explanations and qualifications which accompanied the admissions when they were made. The single exception is appellant's affidavit of Italian citizenship contained in his declaration of intention to become an American citizen filed in the Federal District Court in St. Louis in 1917. On all other occasions, when the question of the place of birth of the appellant was important and material, he has insisted that to the best of his belief he was a native of this country. It is quite evident that, if the appellant was truthful in his testimony in the various deportation proceedings, he does not know when or where he was born. It is equally certain that the record is devoid of any evidence on behalf of the Government tending to establish the place of birth of appellant, except the so-called admissions of appellant. Although it appears that the Government through its consular service caused investigations to be made in Italy, no record was found of appellant's birth in that country. The entries in the record at the port of New York are merely sufficient to raise an inference of an admission by appellant as to Italian birth, but they are not sufficient to establish the fact. Neither the Government nor the appellant was able to offer definite proof of the place of his birth. Appellant's testimony that he filed a declaration of intention to become a citizen in the Federal Court in St. Louis in 1917 because of the absence of direct evidence of his place of birth and the then uncertainty of the result of the deportation proceeding going forward against him is not unreasonable nor improbable. The burden was not upon the appellant to prove that he was a citizen of the United States in this prosecution for crime, but upon the Government to prove that he was not, and that his claim of citizenship was knowingly false. We think the competent evidence in this case fails to carry the Government's burden.

■ Much of the Government's evidence was clearly inadmissible, and, in view of the doubtful sufficiency of the evidence to sustain the conviction, its admission was prejudicial to the appellant. The certificate of admission of the Italian Correale at Laredo, Texas, on February 16, 1929, is typical of the incompetent, prejudicial testimony received by the trial judge. It was admitted that the appellant entered this country the last time at Laredo, Texas, on the same date as Correale, and that on that occasion he was returning from a sojourn in Italy of approximately nine years duration. During that time he had been living in association with his numerous relatives in Italy, among them, his father and mother. The inference is

strong, in view of the past deportation proceedings against him in which the question of the place of his birth was vital, that he would have, during this trip, ascertained the facts concerning it. Correale's certificate of admission showed that Correale came into this country, admitting his Italian citizenship, with permission to remain ten days in transit to Canada. The certificate was offered on all counts of both indictments as an admission by appellant made in the light of full knowledge of the facts that he was born in Italy and also as proof that he entered this country under an assumed name in order to conceal his real identity. There is not only no testimony in the record tending to show that the appellant and Correale were one and the same person, but, since the evidence shows the entry at Laredo, Texas, of a number of Italians in company with the appellant, it is reasonable to believe, as appellant claims, that Correale was another member of the party entered on the date mentioned. Moreover, the certificate bore on its face an endorsement by an immigration inspector, who was never produced or sworn as a witness in this case, containing a suggestion without anything to support it that Correale and the appellant were one and the same person.

 Another example of inadmissible and prejudicial testimony is in the contents of Government Exhibit 24. That exhibit was the transcript of approximately 200 pages of testimony taken before an immigration inspector in Kansas City, Missouri, in 1941. The proceedings were entirely ex parte. The appellant and other witnesses appeared, were sworn, and their testimony transcribed and certified by the inspector. The Government was permitted to introduce in evidence the complete transcript of this proceeding, including the testimony of witnesses taken in the absence of the defendant, among them the defendant's mother-in-law and sister-in-law. Both gave testimony to the effect that the appellant was a native of Italy. Both gave testimony damaging to his character on matters wholly unrelated to the present proceeding. The reception of this evidence violated the fundamental right of the appellant to be confronted with the witnesses against him and denied him the opportunity to cross-examine. The first wife of the defendant also testified at the hearing in question. The transcript of her testimony was received in evidence. Later, when she appeared at the trial as a witness, the Government interrogated her concerning a proceeding for her naturalization following her return to this country from her visit to Italy with the appellant. She had testified on her direct testimony that she always understood appellant was a citizen of the United States, but the Government was permitted to prove that, because she was told by immigration authorities at Ellis Island that the appellant was an alien, she applied for naturalization as the wife of an alien. What the immigration authorities told her about the citizenship of appellant was hearsay.

 Ordinarily in the trial before a court without a jury, the presumption is that the judge discards immaterial evidence, but that presumption must yield to a showing to the contrary. It is evident from the comment of the trial judge in sentencing the defendant that great weight was given to all of the testimony just discussed. Referring to the entry of appellant at Laredo, Texas, the judge, in sentencing him, said: "He came to Old Mexico and then to Laredo. Counsel placed in my hands all the mass of evidence and I studiously went through it all because of the suggestion that this man, whatever his entry, was a valuable man to the Government and his heart was that of a citizen. He came there, presented himself not under the name that he had sought citizenship, not under the name he was tried—some question was raised as to it being the same man and subsequently he admitted that he was the same man."

There was no admission on the part of appellant that he and Correale were the same man. There was no evidence that he entered the port of Laredo under an assumed name. The quotation above shows that the learned trial judge so found and that he was influenced in reaching his decision by the inadmissible evidence concerning the Italian Correale. He was also impressed by the inadmissible testimony of the appellant's first wife. Of this the judge said: "She came back and was naturalized, having had a cloud placed upon her citizenship because she married an alien, and under our law, it was necessary for that cloud to be removed. The cloud was removed. She did not come back saying to the Government that a cloud was placed on her citizenship improperly because her husband was born in this country."

The judge's statement that the great mass of testimony had been placed in his hands and he had studiously gone through all of it justifies the inference that he took into consideration and gave weight to the inadmissible testimony, contained in the transcripts of the prior deportation proceedings. The judge said in his opinion: "In sundry findings made by the United States Immigration authorities in deportation proceedings it was the uniform conclusion that he was an alien, having been born in Italy."

These conclusions of various immigration inspectors that the evidence established the Italian citizenship of the appellant were made in administrative civil proceedings. They were not judgments entered in judicial proceedings, but mere conclusions of administrative officers based upon testimony of witnesses. As evidence of the citizenship of appellant, they were hearsay and inadmissible.

■ We conclude that there was not sufficient competent evidence introduced on behalf of the Government to sustain the conviction under this indictment.

## The Second Indictment

■ Count I of the second indictment charged perjury by the appellant in that in the course of the hearing concerning the private bill to legalize his entry into the United States he was asked: "Did you have a passport or other document showing your origin and identity at the time of your arrival in the United States at the port of New York during November or December 1907?" and, knowing that he entered the United States as a citizen of Italy, he falsely answered: "I had nothing. I came as an American citizen, American born citizen. They didn't require anything. When we got to New York we got right off the boat like anybody else—there was no examination or anything." If the charge here is perjury on appellant's oath that he had no document or passport showing his origin and identity at the time of his arrival in New York in November or December, 1907, it is sufficient to say that there is no evidence to contradict appellant's testimony in this record. If the charge is the falsity of his testimony that he came as an American citizen, the only proof to sustain it is the testimony concerning appellant's contradictory admissions and statements set out in the discussion of the first indictment. The charge here is the falsity of an oath and not the falsity of a statement as was the case in the first indictment. The requirements of proof to warrant a conviction are correspondingly greater. Warszower v. United States, supra. To sustain a conviction of perjury the burden was upon the Government to prove the essential elements of the crime charged by substantial evidence excluding every other hypothesis than that of guilt. Bishop v. United States, 8 Cir., 19 F.2d 224; Salinger v. United States, 8 Cir., 23 F.2d 48, 49; Danaher v. United States, 8 Cir., 39 F.2d 325, 332; Read v. United States, 8 Cir., 42 F.2d 636; Tinsley v. United States, 8 Cir, 43 F.2d 890; Gargotta v. United States, 8 Cir., 77 F.2d 977, 981. "Deliberate material falsification under oath constitutes the crime of perjury * * *." United States v. Norris, 300 U.S. 564, 574, 57 S.Ct. 535, 539, 81 L.Ed. 808. "To convict a person of perjury, probable or credible evidence is not enough." Phair v. United States, 3 Cir., 60 F.2d 953, 954. It is uniformly held by the federal courts that an uncorroborated oath is not enough to establish the falsity of an oath as to which perjury is charged. Goins v. United States, 4 Cir., 99 F.2d 147. The allegation that the testimony of one charged with perjury was false and that the appellant did not believe it to be true when he gave it under oath must be established by two witnesses or by one with circumstances of sufficient corroboration. Boehm v. United States, 8 Cir., 123 F.2d 791, 809, 810; Hart v. United States, 9 Cir., 131 F.2d 59, 61; United States v. Palese, 3 Cir., 133 F.2d 600, 602. The only evidence in support of the charge in this count of the second indictment is the proof of prior inconsistent admissions and contradictory statements of the appellant. But, in proving these admissions, the Government also proved the qualifications and explanations which accompanied the great majority of them, and at the same time introduced incompetent and prejudicial testimony mentioned in the discussion of the first indictment. Under the authorities, the conviction of perjury obtained upon this character of evidence can not be permitted to stand.

■ Count II. The appellant was asked: "Why did you not include the previous deportation proceedings to which you now refer in answer to question No. 17 of the general information form?" To this question the appellant answered: "I didn't know there were any deportation proceed-

ings." The indictment charges that at the time of the question and answer above stated, the appellant well knew that there had been deportation proceedings against him, that he had personally appeared in such proceedings which were instituted in the city of St. Louis, Missouri, had employed counsel, and had testified under oath in opposition.

In the transcript on the appellant's testimony at the hearing on May 21, 1941, the following appeared:

"Q. In answer to question No. 17 of General Information Form No. 1–55 you have failed to make an answer either in the affirmative or negative: The question reads as follows: 'Have you ever been debarred from entry into the United States or been deported, or required to depart from the United States in lieu of deportation, or been, to your knowledge, the subject of an investigation by the Immigration authorities?' I now ask you, have you ever been debarred from entry into the United States? A. No sir.

"Q. Have you ever been deported from the United States? A. No sir.

"Q. Have you ever been required to depart from the United States in lieu of deportation? A. Only in the present investigation the Labor Department is conducting.

"Q. Do you mean to state that your present deportation proceedings, the department has granted you the privilege of departing from the United States in lieu of deportation. Is that what you mean? A. They approved a petition of my wife for me to reenter the United States which I have been unable to comply with on account of the war.

"Q. The next part of question No. 17: 'or been, to your knowledge, the subject of an investigation by the Immigration authorities?' A. Yes, they are now conducting an investigation, so far as I know it.

"Q. Is that the investigation that you have reference to which was taken in Kansas City office about the year 1933 when the Immigration Service began an investigation of your right to be and remain in the United States? A. Yes sir.

"Q. To your knowledge, is that the only time your citizenship has ever been questioned by the Immigration authorities? A. Yes, as far as I know.

"Q. If your citizenship had been questioned, or if deportation proceedings had been instituted at some other time, you would know about it, would you not? A. Well, I don't know what you have reference. If you mean about the time in St. Louis, they had me up there for questioning, if that is what you mean. I was never deported or debarred or anything.

"Q. 'Were you ever the subject of an investigation by the Immigration authorities?' Do you understand the question? A. Yes, I understand the question.

"Q. Were you ever the subject of an investigation by the Immigration authorities prior to the present deportation proceedings which have been instituted against you? A. Yes, I think they investigated me once before when I was in St. Louis.

"Q. Were you ever under deportation proceedings by the Immigration authorities? A. That I wouldn't know. I don't know how to classify that question.

"Q. Well, were you ever served with a warrant of arrest under the Immigration laws? A. I don't remember that. I remember that they had an investigation, everything was all right.

"Q. Why did you not include the previous deportation proceedings which you now refer to, in your answer to question No. 17 of General Information Form? A. Because I didn't know there were any deportation proceedings."

We think the evidence on behalf of the Government, embodied in the above quotation from the testimony of the appellant, is a refutation of the charge of perjury under the second count.

 Immediately before the witness had made the statement on which the count is based, he had stated that he had been the subject of an investigation in St. Louis, which is the deportation proceeding referred to in this count of the indictment. He had explained to the inspector that he did not understand what was meant by deportation proceedings, but had frankly disclosed the truth concerning investigations of his status made by the immigration authorities, including the one which he is charged with denying. The evidence reveals a lack of understanding of the questions. When the question and answer which is the basis of this count is read in the light of the questions and answers im-

mediately preceding, it is impossible for the impartial mind to reach the conclusion that appellant, in answering as he did, was guilty beyond a reasonable doubt of the crime charged. A charge of perjury may not be sustained by the device of lifting a statement of the accused out of its immediate context and thus giving it a meaning wholly different than that which its context clearly shows.

■ Count III of the second indictment alleged that at the hearing before District Inspector Cochran, the witness was asked the following questions:

"(a) Did you ever swear that you were born in Italy?

"(b) You would recall if you had made a sworn statement to the effect that you were born in Italy, would you not?

"(c) Did you ever apply for naturalization papers in the United States?"
and that the witness falsely and wilfully answered as follows:

"(a) No, I don't remember ever doing that. No sir.

"(b) The only thing, if I made a statement like that, would be that my father might have registered my birth there.

"(c) No, I don't remember whether I did or not."

In order to establish the guilt of appellant under this charge, the burden was upon the Government to prove beyond a reasonable doubt that the appellant did remember that in 1917 he had filed his declaration of intention to become a citizen of the United States, and in connection with it had sworn that he was born in Italy. Behrle v. United States, 69 App.D.C. 304, 100 F.2d 714, 715; People v. Doody, 172 N.Y. 165, 64 N.E. 807.

■ Necessarily the recollection of a witness must be shown by circumstantial evidence. But it is not enough that the evidence raise an inference of guilt. In view of the requirement that proof of the appellant's recollection of the incident which he denied recollecting must establish the fact of his guilt beyond a reasonable doubt, something more is necessary to convict than proof that the act, not remembered, did in fact occur. That is the substance of the proof here.

■ The transcript of appellant's testimony introduced by the Government in proof of this charge contains the following:

"Q. Did you ever make a sworn statement to the effect that you were born in southern Italy? A. Not that I know of. The only thing that I can say about that is that if my father registered my birth in southern Italy, then that would be the place where I would be registered—in Italy.

"Q. Did you ever swear that you were born in Italy? A. No, I don't remember ever doing that, no sir.

"Q. You would recall if you had made a sworn statement to the effect that you were born in Italy, would you not? A. The only thing, if I made a statement like that, would be that my father might have registered my birth there.

"Q. Do you know that your father registered your birth in Italy? A. I have no definite proof of it, no sir.

"Q. Did you ever possess a birth certificate or a certificate showing that your birth had been registered in Italy? A. No sir, I never had a certificate like that.

"Q. Did you ever apply for naturalization papers in the United States? A. No, I don't remember whether I did or not.

"Q. You would recall if you had, wouldn't you? A. Possibly, but I don't remember whether I did or not."

The appellant was shown the original and duplicate of his declaration of intention to become a citizen, made on March 14, 1917, 24 years before the examination at which this act of perjury is charged to have been committed. The witness promptly admitted the genuineness of the document exhibited to him. He stated that it bore his signature, but that he had no recollection of it whatever. The substance of appellant's testimony, when all of it is revealed, is that although he denied recollection of an oath which he had made many years before, when his memory was refreshed by a written record, he promptly admitted it.

There is nothing in the case of United States v. Norris, 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808, to require a contrary conclusion. In that case the Supreme Court held that a witness who commits willful perjury can not purge himself of the offense by appearing at a later stage of the hearing and confessing that his testimony was false. See same case in 86 F.2d 379. Norris, in a hearing before a committee of the United States Senate, gave testimony concerning material facts under investigation. On the day following, sev-

eral witnesses flatly contradicted the testimony given by Norris. Norris was present and heard the testimony of these witnesses and, after consultation with his attorney, asked for and was granted permission to return to the stand. On his return he admitted that his previous testimony was false and that he knew that it was false when it was given. He was charged with perjury; tried, and convicted.

The evidence here bears no resemblance to that in the Norris case. Here the witness, upon being confronted with evidence of the oath which he had testified he did not remember, immediately and freely admitted his error. He did not, as did the defendant in the Norris case, wait until his perjury had been exposed and then return to the stand to confess it and ask to be permitted to tell the truth. The matter concerning which he denied recollection had occurred many years before he was examined concerning it. His declaration of intention to become a citizen had been filed during deportation proceedings which, some months after the filing of the declaration, had been terminated by a finding that the charges against him were not supported by the evidence. The naturalization proceedings had not gone beyond the filing of the declaration of intention, and although the Government had later prosecuted extended investigations of appellant's origin and had pressed inquiries into his every act in this country, the declaration of intention to become a citizen was never mentioned, although it certainly was material and important.

The appellant claims that he abandoned the naturalization proceeding on reaching the conclusion that he was born in this country and that he forgot all about it. It may be reasonable to assume that one who filed a declaration of intention to become a citizen of this country would remember its filing and his oath contained in it. But under the proof offered in support of this count, the fact of appellant's recollection remains an assumption and nothing more. In such circumstances we can not hold that the evidence was sufficient to show the guilt of appellant under this count beyond a reasonable doubt.

The judgments of conviction on the first indictment, No. 15,228, and on each count of the second indictment, No. 15,239, are reversed and the case is remanded for further proceedings in conformity with this opinion.