**UNITED STATES v. REMINGTON.**

No. 293, Docket 22045.

United States Court of Appeals
Second Circuit.

Argued June 15, 1951.

Decided Aug. 22, 1951.

Winthrop, Stimson, Putnam & Roberts, New York City, for appellant, William C. Chanler, New York City, Joseph L. Rauh, Jr., Washington, D. C., James S. Rosenman, and John K. Tabor, New York City, of counsel.

Irving H. Saypol, U. S. Atty., New York City, for appellee, Bruno Schachner, Roy M. Cohn, John M. Foley, Albert A. Blinder, Joseph N. Friedman, James B. Kilsheimer, III, Stanley D. Robinson and Robert Rubinger, Asst. U. S. Attys., New York City, of counsel.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and L. HAND, Circuit Judges.

SWAN, Chief Judge.

After a protracted jury trial the appellant was found guilty of the crime of perjury in testifying before a grand jury that he had never been a member of the Communist Party.[1] The evidence submitted to the jury related to three periods, in each of which the prosecution specified in a bill of particulars that the appellant was a member of the Party. The first period covered the years 1936–7, when he was employed as a TVA messenger at Knoxville, Tennessee; the second covered the

1. 18 U.S.C.A. § 1621.

years 1937–40, during which he was a student at Dartmouth and Columbia; and the third covered the years 1940–44, when he was employed in Washington.[2] The jury's general verdict gives no intimation as to the period or periods in which they found him to have been a member of the Communist Party. The appeal challenges the validity of the indictment, the sufficiency of the evidence, the adequacy of the charge to the jury, and the correctness of numerous rulings of the court in the course of the trial. Our conclusion that the judgment must be reversed on account of the inadequacy of the charge to the jury makes unnecessary discussion of many of appellant's contentions.

 1. The Indictment: At the commencement of the trial the court denied a motion to dismiss the indictment for failure to state an offense. The indictment alleged that in May 1950 the defendant appeared as a witness before a grand jury for the southern district of New York, which was investigating possible violations of the espionage laws; that he was asked the question: "At any time have you ever been a member of the Communist Party?" and he answered under oath, "I have never been"; and that "the aforesaid testimony of the defendant, as he then and there well knew and believed, was untrue in that the defendant had been a member of the Communist Party." The statute defines the crime of perjury to be stating under oath "any material matter which he does not believe to be true"[3]. Thus perjury consists in testifying to the truth of a fact which the accused does not believe to be true;[4] his oath must contradict his belief as to the fact sworn to, for otherwise his oath is not wilfully false. In the case at

bar the indictment charged that Remington did not believe his denial of membership in the Communist Party, since it alleged that he "well knew and believed" that his testimony was untrue. The further allegation that he had in fact been a member of the Party was surplusage,[5] but proof of the fact of membership might be relevant on the issue of his belief that he had been a member. There was no error in denying the motion to dismiss the indictment for failure to charge a crime.

2. Sufficiency of the Evidence: As to this it will suffice to say that we find no error in the court's refusal to direct a verdict of acquittal. Since the evidence upon a new trial, if there be one, may be different, there is no need to discuss the evidence in the present record.

 3. The Charge: The principal attack upon the judgment of conviction concerns the charge to the jury. It contained the following instruction: "To find membership in the Communist Party you must find that the defendant performed the act of joining the party. The act of joining is crucial. This is not to say that you must find evidence of the very act of joining the party, but rather from all the evidence you must be convinced beyond a reasonable doubt that he was, in fact, a member of the Communist Party, and was accepted as such by the Party."

This is all we can find by way of definition of what constituted membership in the Party. To this instruction the defendant excepted, because the language following the statement that "the act of joining is crucial" made the charge too "vague and indefinite" to constitute any definition at all of what facts the jury must find in order to convict the defendant. Because of

2. Evidence as to an earlier period, 1934–6, covering the appellant's freshman and sophomore years at Dartmouth, was withdrawn from the jury.

3. 18 U.S.C.A. § 1621: "Whoever, having taken an oath before a competent tribunal, * * * that he will testify, declare, depose, or certify truly, * * * willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury, * * *."

4. Regina v. Schlesinger, 2 Cox C.C. 200; State v. Cruikshank, 6 Blackf., Ind. 62; Com. v. Milles, 140 Ky. 577, 131 S.W. 385; State v. Gates, 17 N.H. 373; 1 Hawkins, Peas, 1787 Ed., c. 69, § 6, p. 322; 2 Wharton, Criminal Law, 12th Ed., §§ 1512–13.

5. United States v. Hiss, 2 Cir., 185 F.2d 822, 831, certiorari denied 340 U.S. 948, 71 S.Ct. 532; Sharron v. United States, 2 Cir., 11 F.2d 689, 690.

the peculiar rule concerning proof in perjury cases, we think the exception was well taken. That rule requires "direct" proof of the crime by two witnesses who testify that the accused violated his oath, or "direct" proof by one witness plus corroborating circumstances.[6] Since the crime of perjury consists in the contradiction between the accused's oath and his belief, the only "direct" evidence of his guilt would seem to be his own declarations of his belief. But the law is well settled that his declarations, if oral, will not satisfy the rule, although they will if written and adequately corroborated.[7] This distinction was laid down in United States v. Wood, 14 Pet. 430, 10 L.Ed. 527, which has been often followed.[8] Since only written declarations will suffice, it follows that if the critical issue must be proved by "direct" evidence, there could be no conviction unless the accused had made contradictory written declarations. But it is clear that perjury convictions are not limited to such cases. Hence it must be that the rule peculiar to perjury as to the character of the proof, means that it is the facts from which the jury may infer the accused's state of mind that must be proved by "direct" evidence. And this view is confirmed by Chief Justice Vinson's opinion in American Communications Ass'n v. Douds, 339 U.S. 382, 411, 70 S.Ct. 674, 690, 94 L.Ed. 925, where it is said: " * * * while objective facts may be proved directly, the state of a man's mind must be inferred from the things he says or does. * * * False swearing in signing the affidavit must, as in other cases where mental state is in issue, be proved by the outward manifestations of state of mind. In the absence of such manifestations, which are as much 'overt acts' as the act of joining the Communist Party, there can be no successful prosecution for false swearing."

Hence the doctrine that perjury must be proved by the direct testimony of two witnesses or one corroborated witness means that the witnesses must testify to some "overt act" from which the jury may "infer" the accused's actual belief.

■ We do not see how the perjury rule can in practice be applied at all in such a case as the present unless the judge shall single out such "overt acts" as furnish a rational basis for inferring what the accused thought constituted membership and which were supported as the rule requires, and shall then instruct the jury that unless they believe the testimony as to such facts—or at least one of them—and think that because of it, taken with any corroborating evidence, the accused must have believed he was a member, they cannot find him guilty. The jury's verdict of guilt presupposes that they have made some definition of their own as to what the accused thought constituted membership and have found some act by him from which they have inferred that he believed himself a member, as so defined. Surely the definition of membership is a vital part of the "overt acts" from which the accused's belief is to be inferred. Unless the court shall instruct the jury in the manner suggested, the rule becomes no more than that there must be in the "direct" proof some "overt act" from which the jury might "infer" the guilty state of mind, but which they may totally disregard in finding their verdict. To ascribe such meaning to the rule would deprive the accused of the full protection which it is intended to afford him. Moreover, the vagueness of the charge was increased by

6. See United States v. Wood, 14 Pet. 430, 10 L.Ed. 527; United States v. Hiss, 2 Cir., 185 F.2d 822, 824, certiorari denied 340 U.S. 948, 71 S.Ct. 532; United States v. Otto, 2 Cir., 54 F.2d 277, 279; Clayton v. United States, 4 Cir., 284 F. 537, 539, 540; Radomsky v. United States, 9 Cir., 180 F.2d 781, 782, 783.

7. We lay to one side a possible exception as to contradictory oral declarations made by the accused under oath, as the case at bar involves no declarations of this character. See Wigmore, Evidence, 3rd ed., § 2043.

8. Clayton v. United States, 4 Cir., 284 F. 537, 540; Phair v. United States, 3 Cir., 60 F.2d 953, 954; Hart v. United States, 9 Cir., 131 F.2d 59, 61; Fotie v. United States, 8 Cir., 137 F.2d 831, 840. Compare United States v. Harris, 311 U.S. 292, 61 S.Ct. 217, 85 L.Ed. 196.

the instruction that the jury might draw the reasonable inferences and conclusions from the evidence, whether the evidence be a direct statement of fact or of circumstance. The jury was told, "You may not have direct proof of a fact but you may have circumstances from which you are able to draw reasonable conclusions and deductions." Hence, despite recital in the charge of the rule as to two witnesses or one corroborated witness, the jury may have thought that they could select such evidence as they chose as proof of guilt and were free to convict on circumstantial evidence alone, which is not the law in the federal courts.[9]

As indicated above it is our opinion that the perjury rule requiring direct evidence cannot be applied unless the court specifically declares what are the "overt acts" which the jury must find, and which the court decides are properly supported under the perjury rule and of themselves form a rational support for finding that the accused's oath and his belief conflicted. In the case at bar this demanded that the judge point out what facts so supported would justify a finding that the accused did not believe that he had never been a member of the Communist Party. Whatever may be thought of the archaic rule as to proof of perjury, it is still the law in the federal courts and its breach in this case operated unfairly, for the accused never learned until the filing of the government's brief on appeal what acts the prosecution would contend showed that he believed himself to have been a member of the Party. In opposing a motion for a bill of particulars, counsel for the government argued that it was "most difficult" to define what constituted membership; and the court did not require the prosecution to specify what facts it would rely on to prove an act of joining or to justify an inference that the accused knew he was a member. The result of leaving the issue so at large was that, as the case was tried, the defendant did not know even at the end of the government's case what he had

to meet; he could only guess what the prosecution was going to say he thought to be membership. It is now argued that use of the Party's postoffice box in Knoxville in 1937 and the payment of dues to the Party in Washington in 1942–4 prove that he knew he was a member in each of those periods. If there should be another trial, we think that the prosecution should be compelled to declare in a bill of particulars those "overt acts" which it will prove as required in perjury and from which it will argue that the accused believed that he had been a member of the Communist Party. This will not prevent the prosecution from introducing other and corroborating evidence.

■ Complaint is made of the court's refusal to charge request No. 64, which was that all the jurors must be convinced that the accused was a member of the Party "at a particular time and place," and if some thought he was at one time only and some at another, they could not convict him. That request was right and should be given if there is a new trial; but we are not prepared to hold the failure to give it was reversible error since the substance of it was probably covered, though not so explicitly, by the charge that the jury must be unanimous and that "Proof of membership in the Communist Party at any one time during that period [1934–1944] is sufficient."

■ 4. Rulings in the Course of the Trial: We now turn to questions which may arise again, if there be a new trial. The court denied the defendant's motion to inspect the minutes of his own testimony before the grand jury. We think inspection before trial should have been allowed. As already stated, the essential issue in perjury is whether the accused's oath truly spoke his belief; all else is contributory to that issue. In deciding it the jury was entitled to know; and the accused was entitled to show, what had gone before the critical question and answer, since this might throw light on how he understood

9. United States v. Otto, 2 Cir., 54 F.2d 277, 279; Clayton v. United States, 4 Cir., 284 F. 537, 539; Radomsky v. United States, 9 Cir., 180 F.2d 781, 782, 783.

the question and what he meant by his answer. For example, if he had previously testified that he never had a Party card, that might indicate that he believed that without a card he could not be a member. His memory of what he said is no adequate substitute for the minutes themselves. It is one thing to deny the defense access to grand jury minutes which it intends to use for the relatively negative purpose of impeaching a witness; it is quite a different thing to deny an accused access to the minutes of his own testimony which may afford him an affirmative defense. Even if the prosecution's use of the allegedly perjurious answer did not, by itself, open the door to the rest of the defendant's testimony,[10] we think he was entitled to it under the principle of this court's decision in United States v. Andolschek.[11] We there held that an accused must be given access to his own official reports which might directly support his defense, even though disclosure of such reports was forbidden by a valid administrative regulation.[12] *A fortiori,* access should not be denied where, as here, inspection of the grand jury minutes is a matter within judicial discretion. We see no good reason for suppressing the evidence under these circumstances.

■ The defendant's request to inspect the grand jury minutes of the testimony of Ann Remington, his former wife, was also denied. Such denial was proper unless, as the defendant contends, Mrs. Remington admitted in her trial testimony that she had changed her story during the course of her grand jury testimony. It is not entirely clear from the present record whether the change of story occurred before or after she began testifying before the grand jury. This ambiguity will undoubtedly be cleared up, if a new trial is had, and it will here

suffice to refer to United States v. Krulewitch, 2 Cir., 145 F.2d 76, 78, 79, 156 A. L.R. 337, reversed on other grounds 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, which, if the appellant's interpretation of her trial testimony is correct, requires that her grand jury testimony be made available to the defense.[13]

■ During presentation of the government's case, the appellant offered to prove that a member of prospective witnesses had been called before grand juries other than the one which had indicted him; that the government's purpose in calling the witnesses was to intimidate them; and that some of them had been intimidated. The defense moved to suppress the testimony of all such witnesses on the ground that this method of preparing the government's case was an abuse of process which tainted the entire evidence so obtained. While we agree that if the government's purpose was as charged, its conduct was unfair and ought not to be condoned, we know of no authority, and none has been cited, for suppressing evidence obtained in this manner. We think the only remedy of the defense is to examine such witnesses as it claims were intimidated and prove, if it can, that such was the fact. Evidence of efforts to suppress testimony or evidence in any form like the spoliation of documents is affirmative evidence of the weakness of the prosecution's case.[14] We do not mean that it would be relevant to this issue to show that a grand jury was called for the express purpose of intimidating witnesses. That is a matter for disciplinary action by the court and does not concern the accused. His interest in the matter is limited to intimidation of his prospective witnesses, which can be brought out as part of the defense evidence which goes to the jury.

10. Cf. United States v. Cotter, 2 Cir., 60 F.2d 689, 692, certiorari denied 287 U.S. 666, 53 S.Ct. 291, 77 L.Ed. 575; Wigmore, Evidence, 3rd Ed., § 2113.

11. 142 F.2d 503, 506.

12. See also United States v. Grayson, 2 Cir., 166 F.2d 863, 870; United States v. Beekman, 2 Cir., 155 F.2d 580, 584; Ed-

wards v. United States, 312 U.S. 473, 481, 61 S.Ct. 669, 85 L.Ed. 957.

13. See also United States v. Cohen, 2 Cir., 145 F.2d 82, 92, certiorari denied 323 U. S. 799, 65 S.Ct. 553, 89 L.Ed. 637.

14. See Wigmore, Evidence, 3d Ed., § 278. Cf. United States v. Freundlich, 2 Cir., 95 F.2d 376, 378, 379; People v. Chin Hane, 108 Cal. 597, 603, 41 P. 697.

 Over defense objections the prosecutor was permitted to make numerous references to the Attorney General's list of subversive organizations during the defendant's cross-examination. This was error, for the list is a purely hearsay declaration by the Attorney General, and could have no probative value in the trial of this defendant.[15] It has no competency to prove the subversive character of the listed associations and, failing that, it could have no conceivable tendency to prove the defendant's alleged perjury even if it were shown that he belonged to some or all of the organizations listed.

We will not at this time deal with the appellant's contention that the indictment should be quashed because of improprieties in the grand jury room which were allegedly committed by the foreman of the grand jury. It is contended that the foreman, one Brunini, had a financial interest in a book which the government's chief witness was writing and that he exercised undue influence in the procurement of the indictment, particularly during the grand jury's examination of the defendant. Since we have already held that the accused must be given access to the minutes of his own testimony before the grand jury, it will appear upon inspection whether Brunini abused his powers, at least in that part of the proceedings. The indictment should not be quashed unless undue influence is shown.[16] It is true that Brunini's alleged abuse of powers may have occurred while the defendant was not on the stand, and that without examination of the rest of the grand jury minutes the defendant may not find it possible to show undue influence. But we are unwilling to turn the indictment procedure into a separate trial. Although it is possible that some abuses may thus go uncorrected, it has been the policy of the law, and we think a sound one, to correct only such irregularities as the accused can prove,

since an indictment is, after all, no more than an accusation.

The remainder of the appellant's contentions do not require discussion. We wish, however, to admonish counsel for the prosecution that in case of a retrial there should be no repetition of the cross-examination attack upon defense witness Redmont's change of name. Redmont testified that he had changed his name for professional reasons and that he had done so pursuant to court order. On cross-examination the prosecutor continued his inquiry of this matter long after it became clear that the change of name had no relevancy to any issue at the trial, and could only serve to arouse possible racial prejudice on the part of the jury.

Judgment reversed and cause remanded.

15. Joint Anti-Fascist Rufugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, passim.

16. United States ex rel. McCann v. Thompson, 2 Cir., 144 F.2d 604, 606, 156

A.L.R. 240, certiorari denied 323 U.S. 790, 65 S.Ct. 313, 89 L.Ed. 630; Fed. Rules Crim.Proc. rule 6(b) (2), 18 U.S. C.A.